## Commonwealth v. Szumski

584

*L. B. Maxwell,* for appellant.

*C. J. Reap,* Deputy Attorney General, contra.

SWOYER, P. J., March 30, 1938.—This matter is before us on an appeal taken by defendant, Joseph Szumski, from the action of the Secretary of Revenue of the Commonwealth of Pennsylvania in suspending his automobile operator's license for a period of six months from February 18, 1938, under section 615 of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751.

In accordance with the provisions of the said act, on March 18, 1938, we heard testimony on the part of both the Commonwealth and the licensee. From this testimony it appears: That one Horton C. Cross on the morning of October 30, 1937, at about 8:15, was traveling a public road leading from Seelyville to Beech Grove in the County of Wayne; that he was driving a Chevrolet truck five feet six inches wide; that as he approached the residence of Edward Welsh the said Edward Welsh waved to him, and that he thereupon drove over upon the wrong side of the road, pulled over so that his two left wheels were about two feet off the highway upon the berm thereof, and stopped; that while he was so stopped in conversation with Mr. Welsh he heard the noise of brakes and, turning, saw the Szumski truck approaching at a high rate of speed; that the Szumski truck passed his parked truck, running partly out upon the right-hand berm, struck a concealed rock and overturned. The traveled portion of the road at this point is 12 feet wide, with a berm of 2 feet to 3 feet on both sides; the rock referred to is about 5 feet long (parallel to the highway) and 3 feet wide; its surface from the direction in which Szumski approached it is

level with the surface of the berm in which it is imbedded, but at its opposite end there is a drop, then concealed by grass, of some 18 to 20 inches; the rock, and especially the sharp drop at one end, is unnoticeable from the highway and the neighbors and others who traveled the road were unaware of its presence. Szumski testifies that on the morning in question he was driving his truck, which is six feet ten inches wide, in the collection of milk; that one boy was riding with him on the seat of the truck, and two others (one of them Joseph Colbusky, the decedent) were riding in the open body of the truck with the milk cans; that as he approached a crossing shortly before reaching the Welsh residence, while traveling at a speed of between 20 and 25 miles per hour, he applied his brakes and slowed down; that he saw the Cross truck parked but that there was plenty of room to pass if he went out slightly upon the berm; that he did pass with his right wheels on the berm, ran the length of the concealed rock, and when his right front wheel dropped two feet from the end of the rock the wheel was wrenched from his hand, he lost control, the truck plunged down into a field and overturned and the Colbusky boy sustained injuries from which he later died. There was also testimony on the part of Corporal Robert Knight of the State Highway Patrol (concerning the admissibility of which there is some doubt) that about half an hour before the accident he had been following the Szumski truck for a distance of about two miles; that at a distance of about a mile and a quarter from the scene of the accident Szumski stopped to load additional milk cans; that he (Knight) also stopped and warned Szumski that he had been traveling too fast considering the presence of the boys in back; and that he (Knight) then drove on and did not see the Szumski truck again. There was also some testimony as to conditions of visibility along the highway, which is immaterial for the reason that the evidence is all in accord that Szumski saw the Cross truck, that he had ample room to pass either on the main traveled portion of the highway or by going

slightly out upon the berm, and that the rock (particularly the sharp drop at the end thereof) was invisible from the highway.

The contention of the Commonwealth is that on this evidence the license of Szumski should be suspended: (1) Because of reckless driving; and (2) because, irrespective of any fault on his part, he was the driver of a motor vehicle involved in a fatal accident; and it frankly admits that Szumski's license was suspended solely upon the latter ground.

Before considering this case we must first determine that which is our duty in the premises. The learned Deputy Attorney General appearing for the Commonwealth sets forth in his very able brief:

"The Commonwealth does not feel that the court of common pleas on appeal should determine what is the desirable penalty under such a civil proceeding as this but rather it should be the province of the court on appeal merely to check the unwarranted exercise of power by an administrative officer."

In support of this contention he cites our own case of Commonwealth v. Tyler (not reported), wherein we said:

"As we understand the law, this is a civil proceeding to determine if facts exist which under The Vehicle Code subject the operator to the suspension of his license. While the hearing in court is de novo and the court must hear the testimony on behalf of both the Commonwealth and defendant, what the court is required and commanded to do under the statute is to 'determine whether the petitioner is subject to the suspension of his operator's license . . . under the provisions of this act', and not whether such suspension, or suspension for a different period, is a desirable penalty for an offense against The Vehicle Code. In other words, the plain intention of the statute as to appeal is to furnish a check against the unwarranted exercise of power by an administrative agency acting upon insufficient or incompetent evidence, but facts hav-

ing been found sufficient to justify action by the Secretary of Revenue, there is no warrant in the statute for the court to substitute its judgment as to the disposition of the case for that of the secretary."

See also the cases of Commonwealth v. Wilson, 29 D. & C. 255, and Commonwealth v. Volz et al., 20 Lack. Jur. 154, where the learned judges of those districts held similarly.

However, our Supreme Court in Commonwealth v. Funk, 323 Pa. 390, 399, sets forth our duty in unequivocal terms as follows:

"In the proceedings in the court below, the question arose whether the hearing was de novo, or to review the record as it existed when the petition under section 616 of the act was filed in the common pleas court. The section in question affords the answer. It says . . . 'thereupon to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license or learner's permit under the provisions of this act.' *The language of the section clearly indicates that it is the duty of the court to hear de novo the witnesses of the Commonwealth and the witnesses of the licensee, and, from the testimony taken, to determine anew whether the operator's license should be suspended.* The court below was in error when it required the testimony taken before the Secretary of Revenue or his representative to be made a part of the record. If the proceedings before it were in the nature of a certiorari, or a review of the action of the Secretary of Revenue to determine whether he had abused his discretion, then such testimony properly would be a part of the record of this case. But the act otherwise provides, and it may be used only collaterally to impeach the credibility of a witness."

It is thus not our province to determine whether or not the Secretary of Revenue had authority to suspend the license of petitioner under the act, nor whether he or his representative did so revoke petitioner's license upon insufficient or incompetent evidence nor in any manner to

review his action; we cannot even consider the proceedings before him to determine the cause of such suspension, nor whether such suspension was made after hearing or because of the failure of petitioner to appear at such hearing. Our sole duty is to hear the testimony of the Commonwealth and of the licensee and to determine therefrom anew and as if we had original jurisdiction whether the license of petitioner shall or shall not be suspended under the provisions of the act. To such duty we now address ourselves.

If, under the evidence, the license of petitioner is suspended it must be for one of two reasons, or for both: (1) That he was guilty of reckless driving; (2) that he was operating a motor vehicle involved in an accident in which a person was killed.

1. Examining the testimony closely, we cannot find therefrom that petitioner was operating his truck in a negligent or reckless manner. All the testimony is that there was no other traffic on the highway, that he had a clear vision of at least 300 feet, and that he was traveling at a speed well within the speed limit. Further, he had ample room to pass, either upon the main traveled portion of the highway or by going out slightly upon the berm. Whether or not he had room to pass on the main traveled portion of the highway is a matter of simple calculation: The Cross truck was parked on the wrong side of the highway, with two wheels 2 feet out on the berm; the main traveled portion of the highway is 12 feet wide; Cross says his truck projected 5 feet into the highway and that there was 7 feet thereof left in which Szumski could pass. The Szumski truck is, however, six feet ten inches wide.

Under these facts, Szumski could either pass with only two inches of clearance or go out slightly upon the berm; this he had a right to do, since the berm may be used for either passing or parking, in fact the legislature has made such use for parking mandatory in requiring cars whenever possible to park entirely off the highway. Nor was he negligent in not sensing an unexpected hazard

(the rock, level with the berm) which all parties concede was invisible from the highway.

Was his speed excessive under the circumstances? Disregarding Szumski's testimony, we have the evidence of Cross that the Szumski truck was "travelling fast", and no court within our knowledge would accept this as competent and conclusive evidence of illegal speed. We also learn from Corporal Knight that, half an hour before the accident, Szumski had been driving too fast considering the boys in the back of the truck, who were being "thrown around". But this is no evidence of speed at the time of the accident; in fact, it is negatived by the apparent fact that it took Szumski half an hour to travel the mile and a quarter from where Knight spoke to him to the scene of the accident.

Did he have his truck under such control that he could stop it within a reasonable distance? Nothing is shown to the contrary. True, when his right front wheel dropped 18 to 20 inches from the end of the concealed rock, he "lost control", but that is a most natural consequence and cannot be charged to negligence on his part; one cannot be charged with negligence because he is not prepared to meet a concealed or unexpected hazard, the more so when such a hazard is not normally a part of a well-kept highway.

2. Failing to find evidence of reckless driving on the part of petitioner, we must next examine the act to determine therefrom whether or not Szumski should have his license revoked merely because without fault on his part he was operating a motor vehicle which became involved in a fatal accident. The Commonwealth contends that such is the case, and so interprets the act of assembly.

The pertinent section (615(b)) of the act reads as follows:

"The secretary may suspend the operator's license or learner's permit . . . after a hearing before the secretary or his representative, or upon failure of the said

person to appear at such hearing, whenever the secretary finds upon sufficient evidence. . . .

"4. That such person was operating any motor vehicle involved in an accident resulting fatally to any person."

In support of its contention, the Commonwealth cites from the opinion of our learned friend Judge Alessandroni, in Commonwealth v. Wilson, 29 D. & C. 255, in part as follows:

"The question before us is whether in the absence of negligence, criminal or otherwise, the Secretary of Revenue has the power to suspend an operator's license on the mere showing that such person was operating a motor vehicle involved in an accident resulting fatally. Subsection 4 was not in The Vehicle Code of 1929, and was specifically added by the legislature when it passed the amending Act of 1931. There can be no mistake as to the legislative intent when it empowered the Secretary of Revenue to suspend an operator's license whenever it was shown that his automobile was involved in a fatal accident."

In view of the dictum of the Supreme Court in Commonwealth v. Funk, supra, we do not construe it to be any part of our duty to determine whether or not the Secretary of Revenue has the power to suspend an operator's license under the amendment of 1931 upon a mere showing that the said operator was driving a car involved in a fatal accident, and in the absence of negligence, criminal or otherwise. Our province is to determine whether under such circumstances the amendment of 1931 makes it mandatory upon us to suspend the license of the operator.

In construing any act of assembly, it is the duty of the court to determine as fully as may be from the wording of the act the intent of the legislature in enacting it, with due relation to each other of the several sections of the act. Thus we have here (1) the provision that under cer-

tain circumstances the secretary may suspend the operator's license and (2) several subsections setting forth the conditions under which such operator's license may be suspended; there is no mandatory requirement here upon either the secretary or upon this court that either he or we must suspend an operator's license if he is involved in a fatal accident; had the legislature so intended, it could well in its wisdom have used the word "shall" rather than the directory "may".

Further, in theory at least, common sense is the basis of all law; we are constrained to believe that the legislature in adding the amendment of 1931 must have contemplated the use of a modicum of that commodity by the secretary and by the courts in enforcing that amendment. Otherwise, we must hold that, under this act, were a man driving his car lawfully upon his own side of the road, using every possible precaution and with his own children in the rear seat, and a reckless or intoxicated driver plunged into him with the result that his children were killed and himself injured, his license must be revoked because he was operating a car involved in a fatal accident. We will not so insult the legislature, but remain firm in the belief that the legislative intendment was, and is, that the operator's license of the driver of a car involved in a fatal accident should be suspended only when his carelessness or negligence is a contributory cause of that accident.

Therefore, being of the opinion that Joseph Szumski was not recklessly operating his truck at the time of the happening of the fatal accident, and that in the absence of negligence on his part his operator's license should not be suspended merely because he was the operator of a motor vehicle involved in a fatal accident, we make the following

### Order

Now, to wit, March 30, 1938, for the reasons hereinbefore stated, the order of the Secretary of Revenue dated

592

February 18, 1938, suspending the operator's license of Joseph Szumski for a period of six months from that date is reversed, and the said operator's license reinstated.