## Haskell's Appeal

*W. P. Geary*, for appellant.
*Leslie R. Himes*, contra.

RIMER, P. J., December 14, 1938.—On May 23, 1938, the Secretary of Revenue notified this operator of a suspension of his motor vehicle privileges for 90 days. The charge was "speeding". After a hearing before a department representative under section 615 of The Vehicle Code of May 1, 1929, P. L. 905 as amended by the Act of June 22, 1931, P. L. 751, this order was made. The matter now comes before us de novo and under the authority

of Commonwealth v. Funk, 323 Pa. 390, 400, this is a civil proceeding and to be determined upon a preponderance of the evidence.

The offense was alleged to have occurred upon a highway not within a business or residence district, etc. and under section 1002 (d) of The Vehicle Code as amended, supra, speed is to be timed "for a distance of not less than one quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within . . . thirty (30) days prior to the alleged violation."

The evidence on the part of the Commonwealth witness, Officer Hubley, is that on March 9, 1938, on the public highway within the County of Clarion and between Clarion and Brookville, he followed the operator for over one half mile and that the speed at which the operator traveled was 60 miles per hour; and that he had taken the car then used and which was equipped with a speedometer, to have said speedometer tested for accuracy to Barnes Auto Service at Meadville, Pa. and observed the test. E. F. Barnes, produced by the Commonwealth, testified that he was the owner of Barnes Auto Service engaged in speedometer checking and other electrical work and general repairs, and identified the car used by Officer Hubley by equipment and license number, as also by the serial number. He stated that he tested the car for accuracy on February 14, 1938, at the speeds of 40, 50, 60, and 70 by the use of a master speedometer built by F. W. Stewart & Company of Chicago, and that this was the usual way to test speedometers for accuracy. He mentioned another method, viz. testing with a stop watch on a measured mile. As to his experience, he testified that he did considerable testing for the Pennsylvania Motor Police. In chief he testified that this test showed the speedometer in question to be accurate at the speeds above given. However, on cross-examination he stated that his notes of the test showed the speedometer to be "fast" at the above speeds, viz. 1 mile at 30 miles; 2 miles at 40 miles; 3 miles at

50 miles; and 5 miles at 60 miles per hour. He further testified as to the change in speedometers from month to month and under changed conditions. It is a matter of general knowledge that speedometers are bound to vary more or less in determining speed. Absolute accuracy cannot be expected. Therefore, we have come to the conclusion that, with allowance made, the reading of this speedometer may be accepted in evidence.

On the part of the operator we have his testimony that he does not know how fast he was going. This operator is to be commended for truthfulness, but leaves the court without much option in the case since we must determine whether or not the lawful rate of speed was exceeded by the weight of the evidence. Thus we have only to decide whether or not the speedometer used by the officer was tested for accuracy as required by law.

The operator does not challenge the accuracy of the speedometer used by the officer by giving a reading of his own. We have only to determine whether or not the test used is a compliance with the law. It was within the time. There are no statutory requirements as to the character of the test nor any standard tests known to the court. From the evidence of the person making the test we can only conclude that when this speedometer showed the car was traveling at the rate of 60 miles per hour, it was moving only at the rate of 55 miles per hour. However, this leaves an excess of speed of 5 miles per hour, as not denied, and the court is impelled to enter a decree sustaining the order of the Secretary of Revenue. We do not feel that the court has discretion to lengthen or shorten the term of suspension. Under this appeal we may only determine whether the operator's license should be suspended.

### Order and decree

And now, December 14, 1938, the order of the Secretary of Revenue, dated May 23, 1938, withdrawing motor vehicle privileges of the operator, Harry V. Haskell, and suspending his operator's license for a period of 90 days,

is affirmed, with allowance to appellant for the period elapsing between the date of said order and the supersedeas upon appeal dated June 7, 1938. Appeal dismissed at the costs of appellant.