## Commonwealth v. Hertzler

*Mark E. Garber*, for Commonwealth.
*Harold S. Irwin*, for defendant.

REESE, P. J., January 25, 1946.—In November 1945, E. Z. Hertzler, in compliance with a notice from the Secretary of Revenue, took a special examination, conducted by two members of the Pennsylvania State Police, to determine his competency to operate a motor vehicle. Subsequently, on December 11, 1945, his operating privilege was suspended indefinitely on the ground that he was an incompetent driver. On December 18, 1945, he presented his petition for a hearing in the matter in this court. A hearing was held on January 22, 1946, after proper notice to the Secretary of Revenue.

Section 608 (*f*) of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, provides:

"The secretary may, in his discretion, require the special examination, by such agencies as the secretary may direct, . . . of any operator, to determine incompetency. . . ."

Section 615 of The Vehicle Code provides that the secretary may suspend an operator's license or privilege upon finding, inter alia, "that such person is incompetent or unable to exercise reasonable and ordinary control over a vehicle".

Under section 616 of The Vehicle Code, which provides for appeal to the court of common pleas by an operator from the suspension of his license by the secretary, it is the duty of the court to hear de novo the witnesses of the Commonwealth and the witnesses of the licensee, and, from the testimony taken, to determine anew whether the operator's license should be suspended, and in so doing, the court of common pleas has a broad discretionary power, in the exercise of which, the court is to administer justice according to the evidence and circumstances presented: Commonwealth v. Cole, 350 Pa. 369; Handwerk Automobile

License Case, 348 Pa. 263; Commonwealth v. Funk, 323 Pa. 390.

At the hearing before us, to sustain the contention that the licensee herein was an incompetent operator, the Commonwealth relied on the testimony of the two State policemen who gave Hertzler a special driving examination in Carlisle in November 1945. One of them conducted the driving test and the other gave an oral examination. The former testified that he had Hertzler drive over several Carlisle streets, including the main portion of the business section. In doing so, Hertzler encountered five or six "through traffic stop signs". The officer testified that at one sign, Hertzler slowed down, but did not come to a complete stop. At the others, he stopped but, in the officer's opinion, too far from the curb line to afford reasonable view of traffic on the "through street". The officer also caused Hertzler at one point to turn around by backing into an intersecting street and said that in doing so Hertzler did not back into the right-hand side of the intersecting street. The officer reported Hertzler as having failed in the driving test, although he admitted that Hertzler had driven carefully and did not mention any instance where Hertzler had endangered others by the manner in which he stopped and proceeded at stop signs or backed into the intersecting street.

The other officer who conducted the oral examination testified that he asked Hertzler 10 out of 15 questions "in Series A" in a booklet or pamphlet issued by the Secretary of Revenue and that Hertzler had answered six questions incorrectly. He also testified that Hertzler had incorrectly identified or explained some of the pictures of signs found in the same booklet. The officer was unable to state what questions he had asked Hertzler or which ones Hertzler had incorrectly answered. The officer reported Hertzler as having failed in the examination.

We do not think that in the driving test Hertzler showed such incompetence as to justify indefinite suspension of his operator's privilege. From a personal observation the writer of this opinion feels that if Hertzler's driving in that test justifies an indefinite suspension, there are few drivers who would not meet a similar fate. As to the oral examination, upon a de novo hearing to determine competency of an operator, we feel the Commonwealth should have shown us what questions were asked Hertzler and which of them he answered incorrectly. Neither the booklet nor that part of it designated "Series A" was offered in evidence. We are totally unable to determine from the evidence submitted whether Hertzler's answers revealed incompetency to operate a motor vehicle.

Hertzler called three witnesses who had ridden with him recently and all testified that he was a competent and careful driver. On cross-examination of these witnesses and of Hertzler himself, it appeared that Hertzler had been involved in an accident in February 1945, in another in January 1944, and in other minor accidents prior thereto. But it did not appear that he had ever caused any personal injuries or that he had ever been arrested or convicted of any violation of The Vehicle Code. Nor did the evidence satisfy us that he had been negligent or reckless in any of the accidents. Even where an operator has been involved in a fatal accident, the mere fact of the accident, without proof of negligence or recklessness, will not justify a suspension of the operator's license: Commonwealth v. Cole, 350 Pa. 369.

We do not feel that, under the evidence and circumstances presented before us and in the exercise of a broad discretionary power, we should, in justice, sustain the suspension. We shall, therefore, sustain the appeal and direct the reinstatement of the operator's privilege.

And now, January 25, 1946, it is ordered and directed that the action of the Secretary of Revenue in suspending indefinitely the operator's privilege or license of E. Z. Hertzler be and the same hereby is reversed and set aside and the Secretary of Revenue is directed to reinstate the said privilege or license.