## Thomas License

*Everett A. Rosser*, for Secretary of Revenue.

*Irving L. Epstein*, for appellant.

HOBAN, P. J., June 6, 1952.—Gaylord D. Thomas, a resident of Lackawanna County, and a licensed motor vehicle operator, was arrested for speeding, brought

before a justice of the peace, pleaded guilty and paid a fine. Subsequently he was cited by the Secretary of Revenue for suspension of his operator's license for a violation of The Vehicle Code, his case was heard before an examiner and after report made the Secretary of Revenue suspended his license. He filed a timely appeal and the appeal was heard in this court before Hoban, P. J. At the conclusion of the hearing, the hearing judge on a clear showing of violation of the speed regulations of The Vehicle Code concluded that the license was subject to suspension and so dismissed the appeal. To this action Thomas filed exceptions, which were argued before the court en banc. Counsel for appellant cited a series of decisions of our Supreme Court, which indicated that on such an appeal not only was the hearing held de novo, but the hearing judge was required to find facts and exercise his independent judgment as to whether upon all the facts in the case the license ought to be suspended. The action of the Secretary of Revenue was not to be reviewed for propriety or sufficiency of evidence. My colleagues at the time of the argument were of the opinion that the matter of suspension on appeal and hearing de novo rested within the sound discretion of the hearing judge, an opinion with which I am compelled to agree after examination of the authorities. Since the cases require the hearing judge to make findings of fact, I state the findings in this case as follows:

1. On May 26, 1951, at 9:50 a.m., defendant, Gaylord Thomas, operated his automobile on Route No. 309 in Berks County at a speed of 65 miles per hour.

2. At the time and place in question the day was clear, the road was dry, the road was a three-lane highway and traffic was moderate.

3. There were no circumstances other than the speed of the vehicle itself to indicate that defendant was operating his motor vehicle in other than a careful man-

ner, or with any degree of recklessness or with any disregard for the safety of other travelers on that highway.

4. Defendant has been a licensed motor vehicle operator for 27 years, averages from 15,000 to 20,000 miles per year of driving in both business and pleasure and has never been arrested for or charged with any violation of The Vehicle Code.

5. Defendant is the owner and operator of an insurance agency and about 80 percent of his driving time as a vehicle operator is spent on the business of the agency and the personal use and operation of the vehicle is necessary to him for the normal conduct of his business.

Here we have presented a typical instance of an uncomplicated speeding case without any aggravating circumstances where a good citizen, who needs to operate a motor vehicle in his daily business affairs, was caught in a violation of the speed regulations of The Vehicle Code. In a number of cases the Supreme Court has refused to disturb the findings of the lower courts that in such situations the license ought not to be suspended, and have accordingly revoked the order of the Secretary of Revenue suspending the operator's license. I cannot see that the case of Mr. Thomas differs in any material fact from such cases, and since I hold that it would be bad administration of justice to hold Mr. Thomas liable for the severe sanction of suspension when other motorists in similar circumstances are not so held, I, therefore, find that the operator's license of defendant, Gaylord Thomas, is not subject to suspension and will, therefore, direct that the order of the Secretary of Revenue be revoked and the Secretary be directed to restore the operator's license to this defendant.

Having reached this decision, I think it but proper to make some observation on the current state of the

law with reference to the suspension of motor vehicle operators' licenses.

Section 615 of The Vehicle Code as amended provides, inter alia.

"(b) The Secretary may suspend the operator's license . . . after a hearing before the Secretary or his representative, whenever the Secretary finds upon sufficient evidence:

"(2) That such person has committed any violation of the motor vehicle . . . laws of this Commonwealth. . . .

"(4) That such person was operating any motor vehicle . . . involved in an accident resulting fatally to any person."

The interpretation of the foregoing provisions of The Vehicle Code has given rise to considerable litigation and a body of opinions in our Supreme Court, commencing with Commonwealth v. Funk, 323 Pa. 390, and the latest of which is Commonwealth v. Etzel, 370 Pa. 253. For the purpose of these observations I do not deem it necessary to review these cases in detail. In Commonwealth v. Wagner, 364 Pa. 566, Mr. Justice Jones in 1950 reviewed the cases to that date, and the Etzel Case, supra, again reiterated the position of the Supreme Court on the questions here discussed. If I gather correctly, the doctrine expressed and developed by these various opinions may be expressed as follows:

The highways of the State are owned by the people of the State and they may regulate and direct the use of the highways in the interest of all people and prescribe such rules and regulations as the sovereign people believe to be necessary. The will of the people is expressed through the legislature, which has so expressed its will as to the use of the highways by individuals driving motor vehicles through the provisions of The Vehicle Code.

The Secretary of Revenue is the individual designated by the sovereign to administer these rules and regulations.

The delegation to the secretary of the power to revoke or suspend licenses and the provision of an appeal from the exercise thereof to the courts is the delegation of an administrative power and is not an invasion of the judicial power reserved under our tripartite form of government to the judiciary. The administrative power to suspend after hearing and upon sufficient evidence as granted to the secretary by The Vehicle Code, does not violate the due process clause of the Federal Constitution, since the operator affected thereby is presented with adequate notice, has an opportunity to present evidence in his own behalf and has an ultimate right of appeal to the courts.

The license to operate a motor vehicle upon the highways of the State is a privilege and is neither a property right nor is the permission to operate a motor vehicle embraced within the term, "civil rights".

"Although the privilege may be a valuable one, it is no more than a permit granted by the State, its enjoyment depending upon compliance with the conditions prescribed by it, and subject always to such regulation and control as the State may see fit to impose": Commonwealth v. Funk, supra, page 395.

The suspension of an operating privilege, whether by action of the secretary or subsequently by decision of a court on appeal, is the application of a civil sanction rather than a criminal penalty, and so in analyzing evidence the court should be guided by the rule of preponderance of evidence rather than of reasonable doubt. But regardless of the administrative character of the secretary's application of the sanction, when the case is moved by appeal to a court, the courts hearing the case de novo and independently of the evidence submitted before the secretary, must determine according

to the rules of judicial discretion whether or not the license ought to be suspended, and uniformly the trend of the decisions has been to the effect that there must be a showing of something in the nature of a wrong committed by the violator rather than a mere so-called technical violation of the regulations in The Vehicle Code. Upon review by an appellate court, the appellate court treats the proceedings in the lower court as if on certiorari and thus examines the record only to see that due process has been observed and judicial discretion has not been abused.

Thus on the speeding questions the appellate courts have refused to disturb the discretion of the lower courts where such courts have held that all the circumstances ought to be examined in order to determine whether as a matter of "justice and right" the license ought to be suspended, and in the cases involving deaths the courts have insisted that a showing of fault or negligence on the part of an operator of a vehicle involved in a fatal accident must be proved before a license may be suspended for the sole reason that an operator has been involved in an accident in which a fatality occurred.

I submit that these rulings clearly indicate that regardless of the language used, our courts have treated the deprivation of operating privileges as the deprivation of a right, but under our concept of the law citizens are to be deprived of rights only through the action of a judicial tribunal. Thus the situation facing an administrator of a general policy of the State and the influences which legitimately may lead an administrator to apply strictly the regulations prescribed by the sovereign, presumably for the benefit of the citizenry as a whole, are not considered. But regard is had only as to whether the individual citizen under a given set of circumstances ought to be deprived of his operating permit. It is obvious, for instance, that en-

forcement of the speed limitations can only be generally maintained, with the limited number of police available, by spot-checking and spot enforcement, for we shall never have a sufficient number of police to tab every violator of the speed laws at the time of his violation. The only practicable method of enforcing such regulations is to let it be known that all violators when caught will be subject to a penalty. If then a violator by appeal to the court may defeat the application of the administrative policy by showing circumstances in mitigation rather than justification, how can the administrator reasonably expect to provide sound and uniform administration of the policy of the State?

I submit further that if a license to operate a motor vehicle is to be regarded as the grant of a privilege upon conditions laid down by the State, the agency of the State charged with granting the privilege ought to be able, when the conditions are violated, to withdraw the privilege or else the word "privilege" ceases to have its meaning.

Now, consider the situation facing the courts of the State. Some 134 judges of the courts of common pleas and the judges of the County Court of Allegheny County may be appealed to to determine within their individual discretion as to whether a license ought to be suspended for a violation of any of the provisions of The Vehicle Code. While all of these judges may be presumed to exercise judicial discretion in the same general way, that is, they will hear evidence, weigh it, determine whether a violation has been committed and apply or not apply with conscientious effort the sanction authorized by the law, Judge A. may determine that a speed of 65 miles an hour on an open highway is unconscionable and reckless, while Judge B. may consider that driving by a competent operator in a good car, at such speed and under such circumstances,

is a perfectly safe and innocent operation. Judge C. may decide that an operator's previous good driving record and freedom from accidents or arrest should suffice to relieve him from the sanction, while Judge D. may decide that such considerations have nothing to do with the case. There is no principle or guide to which these courts may look if they may not look to the general administrative situation facing the officials who are charged with carrying out the regulations prescribed by the legislature. It seems to me that this is a situation which may result in either bad administration or bad law, or both.

I apprehend that, considering the situation facing both the State and the owners and operators of motor vehicles under modern conditions, the true rule ought to be: A citizen qualified physically and mentally for the operation of a motor vehicle has a right to operate a motor vehicle upon the highways of the State, the exercise of this right to be subject to such tests and qualifications as the State in the interest of the public safety of all its citizens and the safe use of the roads may prescribe, but a right nevertheless. One would find it difficult to explain to the owners of over 50,-000,000 motor vehicles in this country that they are operating on the roads of the country by privilege rather than by right. If the operation of a motor vehicle is a right, then the so-called license ought to be regarded as an expression of the qualifications of the operator to exercise that right and the deprivation of that right for a violation of law is clearly a penalty and not a civil sanction, and a penalty ought to be imposed only by the judicial agency rather than by an administrator. If this viewpoint is correct, then the imposition of administrative sanction for a violation of law is in fact an invasion of the judicial prerogative. In any event it seems an inconsistent procedure and contrary to sound judicial principles to have a proce-

dure involving examination, hearing, recommendation by an examiner and decision by the secretary, all supposedly based on principles of sound administration, and then by appeal jump to an entirely different set of principles involving the application of judicial, rather than administrative discretion, to the same situation. The delay and expense both to the State and to the citizen involved seem to be a useless waste of time and money.

In my opinion, with due respect to the considerations animating the appellate court in 1936 when the Funk Case was decided, the whole situation ought to be reviewed, either by the legislature or by our appellate courts in the light of conditions as they are today. The enormous increase in highway mileage and in the number of motor vehicles operating on these highways between 1936 and 1952 certainly calls for a most realistic approach to the problem of highway safety and the regulation of the use of motor vehicles. I realize that if the theory of operation of a motor vehicle as a right and the suspension of that right for violation of that right as a penalty, is adopted, a substantial increase in the business of the courts may result, but on the other hand, if the privilege theory is to be maintained, I can see little justification for depriving the administrator by judicial fiat of the power to determine the merits of suspension in any case in accordance with the administrative principles which must guide him. The arbitrary exercise of this power may be guarded against by providing for review of his actions in the nature of certiorari to determine whether in fact his procedure has amounted to due process in any given case.

But for the reasons as above stated, we must reverse the action of the Secretary of Revenue in this case and direct the restoration of the operating license of defendant.

Now, June 6, 1952, the action of the Secretary of Revenue in revoking the motor vehicle operator's license of defendant, Gaylord D. Thomas, is reversed, and the secretary is directed to restore the operator's license to defendant.