Commonwealth, Appellant, *v.* Funk.

Argued March 24, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*George W. Keitel,* Assistant Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, for appellant.

No appearance was made, nor brief filed, for appellee.

OPINION BY MR. JUSTICE BARNES, June 26, 1936:
The appellee was arrested on February 28, 1935, near Bellefonte, Centre County, by a state highway patrol-

man and charged with operating an automobile in a reckless manner. Immediately following his arrest he was examined by the physician of Rockview Penitentiary and found to be under the influence of intoxicating liquor. He was then charged with drunken driving before a local justice of the peace, and posted bond for his appearance at the next term of court. On July 23, 1935, appellee appeared in the Court of Quarter Sessions for Centre County, waived the finding of a true bill by the grand jury, entered a plea of not guilty, and elected to be tried before the judge without a jury, under the provisions of the Act of June 11, 1935, P. L. 319. After hearing, he was found not guilty and ordered to be discharged.

It is alleged that appellee was summarily tried without an opportunity being afforded the Commonwealth to produce its witnesses. Several days before trial the Commonwealth was informed by letter to the highway patrol from the district attorney of the county that defendant (appellee) would appear in court on July 23, 1935, and enter a plea of guilty to the charge. This letter is in the record and appears to be based upon information given to the district attorney by the trial judge. It is asserted that this letter misled the Commonwealth into believing that the presence of its witnesses would not be required, as a trial was not to be held.

Thereafter, the secretary of revenue of the Commonwealth, under the provisions of section 615 of the Act of May 1, 1929, P. L. 905 (known as "The Vehicle Code") as amended by section 2 of the Act of June 22, 1931, P. L. 751,[1] cited appellee for a hearing to deter-

---

[1] The Vehicle Code of May 1, 1929, P. L. 905, provides in section 614, for the revocation by the secretary of revenue of an operator's license or learner's permit upon conviction of certain offenses enummerated in that section. It also provides in section 615, as amended by the Act of June 22, 1931, P. L. 751, for the suspension of the

mine whether his operating privilege should be suspended for a violation of the motor vehicle laws. After a hearing, at which appellee appeared and was represented by counsel, the secretary of revenue, by order dated November 19, 1935, suspended the operator's license of appellee for a period of one year. Appellee then petitioned the court below for a hearing pursuant to the provisions of section 616 of The Vehicle Code, to determine whether his license was subject to this suspension. The court granted a supersedeas of the suspension order, pending the determination of the proceedings, and, following a hearing before the same trial judge who had acquitted appellee of the criminal charge in the quarter sessions court, a final decree was entered rescinding the order of the secretary of revenue, and directing him to restore to appellee the operating privilege. From that decree this appeal is taken by the Commonwealth.

Although the record fails to indicate that the question was raised by either of the parties in the court below, the trial judge declared unconstitutional and void the provisions of The Vehicle Code delegating to the secretary of revenue the power to revoke or suspend an automobile operator's license. He held that such provisions (1) conflict with the Fourteenth Amendment to the Constitution of the United States in that they deprive a citizen of a property right without due process of law;[2] (2) contravene article I, section 9, of the Con-

license by the secretary under certain conditions. Among the provisions in section 615, as amended, is the following:

"(b) The Secretary may suspend the operator's license . . . after a hearing before the Secretary or his representative . . . whenever the Secretary finds upon sufficient evidence . . . that such person has committed any violation of the motor vehicle laws of this Commonwealth."

[2] The clause of the Fourteenth Amendment to the Constitution reads as follows: "Nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of its laws."

stitution of Pennsylvania by depriving a citizen of his property without the judgment of the law of the land;[3] and (3) violate article V, section 1, of the Constitution of this Commonwealth by attempting to vest judicial power in an administrative officer.[4]

The plenary power of the legislature over the highways of the Commonwealth is of ancient standing, and seldom, if ever, has been questioned: *O'Connor v. Pittsburgh*, 18 Pa. 187; *Com. v. Erie & N. E. Railroad Co.*, 27 Pa. 339; *Southwark Railroad v. Philadelphia*, 47 Pa. 314; *Duquesne v. Fincke*, 269 Pa. 112; *Foley v. Beech Creek Ext. R. R. Co.*, 283 Pa. 588. It was said by Chief Justice GIBSON in an early case: "In England, a highway is the property of the King as parens patriæ . . . In Pennsylvania, it is the property of the people, not of a particular district, but of the whole state; . . . Highways, therefore, being universally the property of the state, are subject to its absolute direction and control": Case of *The Phila. & Trenton Railroad Co.*, 6 Wharton, 25, 43.

It must be treated as elementary law that public roads are laid out and opened for the use of all persons on equal terms, that is, for all who comply with the reasonable regulations of the duly constituted authorities. The right to use a public highway for travel or in the transportation of merchandise is not unrestricted: *Com. v. Dennison*, 48 Pa. Super. Ct. 293. It is for the Commonwealth, acting through the legislature, to direct the

---

[3] The provision of article I, section 9, of the Constitution of Pennsylvania, which is thus invoked, provides: "Nor can he [the citizen] be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land."

[4] Article V, section 1, of the Constitution of Pennsylvania, reads as follows: "The judicial power of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates courts, and in such other courts as the General Assembly may from time to time establish."

conditions under which this limited right shall be exercised: *City of Allegheny v. Zimmerman,* 95 Pa. 287; *Com. v. Doughty,* 55 Pa. Super. Ct. 88. It alone has the power to regulate the manner and circumstances under which automobiles may be operated upon the highways of the Commonwealth. This power is vested in the legislature, and is based not only upon its right to control and regulate the use of the highways, but is buttressed by the inherent police power of the state.

This power of the state has been upheld by the Supreme Court of the United States. In *Kane v. New Jersey,* 242 U. S. 160, 167, the Supreme Court said: "The power of a state to regulate the use of motor vehicles on its highways has been recently considered by this Court and broadly sustained." See *Hendrick v. Maryland,* 235 U. S. 610. Mr. Justice BUTLER said, in *Hess v. Pawloski,* 274 U. S. 352, 356: "Motor vehicles are dangerous machines; and, even when skilfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the State may make and enforce regulations reasonably calculated to promote care on the part of all residents and nonresidents alike, who use its highways." See also *Hodge Co. v. Cincinnati,* 284 U. S. 335.

The permission to operate a motor vehicle upon the highways of the Commonwealth is not embraced within the term civil rights, nor is a license to do so a contract or a right of property in any legal or constitutional sense. Although the privilege may be a valuable one, it is no more than a permit granted by the state, its enjoyment depending upon compliance with the conditions prescribed by it, and subject always to such regulation and control as the state may see fit to impose.

While this question is before this Court for the first time, due no doubt to the fact that there has been almost general recognition given to the principles stated, the views here expressed are in accord with the decisions of the appellate courts of other states: *LaPlante v. State*

396

*Board of Public Roads,* 47 R. I. 258; *People v. Stryker,* 206 N. Y. S. 146; *People v. Cohen,* 217 N. Y. S. 726; *Ruggles v. State,* 120 Md. 553; *Watson v. Division of Motor Vehicles,* 212 Cal. 279; *Burgess v. Mayor and Aldermen of Brockton,* 235 Mass. 95.

Automobiles are vehicles of great speed and power. The use of them constitutes an element of danger to persons and property upon the highways. Carefully operated an automobile is still a dangerous instrumentality, but when operated by careless or incompetent persons, it becomes an engine of destruction. The legislature in the exercise of the police power of the Commonwealth not only may but must prescribe *how* and *by whom* motor vehicles shall be operated on the highways. One of the primary purposes of a system of general regulation of the subject-matter, as here by The Vehicle Code, is to insure the competency of the operators of motor vehicles. Such a general law is manifestly directed to the promotion of public safety and is well within the police power. Even if the license were a right of property, which it is not, it would be held in subordination to such reasonable regulations by the state as are clearly necessary to preserve the safety, health and morals of the people. The enforcement of these regulations by revocation or suspension of the privilege is not the taking of property without due process of law.[5] In *Howard v. Commonwealth of Kentucky,* 200 U. S. 164, 173, it was said: ". . . due process of law . . . was not designed . . . 'to interfere with the power of the state to protect the lives, liberty and property of its citizens. . . .'" We decided in *Com. v. Andrews,* 211 Pa. 110, that the statute forbidding the sale of oleomargarine without a license was a constitutional exercise of the police power. In *Buffalo Branch, Mutual Film Corporation v. Breitinger,*

---

[5] An examination of the statutes of other states reveals that at least in twenty-four states there are substantially similar provisions for the revocation or suspension of the operator's license or privilege.

250 Pa. 225, we held that the statute for the appointment of a state board of censors to regulate the operation and exhibition of motion picture films did not violate the constitutional right of property of the citizens of the state. See also *White's App.*, 287 Pa. 259.

It follows that the authority which granted the privilege in question retains the power to revoke it, either for due cause of forfeiture, or upon a change of policy and legislation in regard to the subject. The power of revocation cannot be pronounced unconstitutional, either as an impairment of a contractual right or as a deprivation of a property right. In accordance with these principles are the following cases: *People v. Cohen*, supra; *Ruggles v. State*, supra; *Watson v. State Division of Motor Vehicles*, supra; *People v. Stryker*, supra.

If the constitutional provisions of "due process" and "judgment of the law" were here applicable they would be fully satisfied by the procedural steps specified in sections 615 and 616 of The Vehicle Code. As we have seen, they require a hearing before the Secretary of Revenue, or his representative. Suspension of the licensee's operating privilege is authorized only when the Secretary finds upon sufficient evidence that the offenses enumerated have been committed. Section 616 allows an appeal to the court of common pleas wherein the licensee resides. The licensee is given an opportunity to be heard and to produce witnesses in his own defense. The whole machinery of the law is available in his behalf. Here, the Secretary of Revenue fulfilled the statutory mandates by holding the hearing and by finding that the appellee had violated the motor vehicle laws of this Commonwealth. The appellee then availed himself of his right to be heard anew by the common pleas court. This system sets up every requirement of due process of law, and an operator whose license has been revoked or suspended cannot complain that he has been arbitrarily deprived of the enjoyment of the privilege. The Supreme

Court of the United States, in *Reetz v. Michigan,* 188 U. S. 505, 508, held that due process of law is not necessarily judicial process, and said in quoting from *Hurtado v. California,* 110 U. S. 516: " 'It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law.' "

The power conferred upon the Secretary of Revenue to revoke or suspend operating privileges is an administrative and not a judicial function. Accordingly, the delegation of such power to him by The Vehicle Code is not prohibited by article V, section 1, of the Constitution of this State. This question of the delegation of power to an administrative officer was definitely settled by the decision of this Court in *Gima v. Hudson Coal Co.,* 310 Pa. 480. We decided there that while the legislature cannot delegate its power to enact a law, it may make a law which delegates the power to determine some fact or state of things upon which the law makes its own action depend. See also *Locke's App.,* 72 Pa. 491. Thus the legislature has created, inter alia, the Public Service Commission, the Workmen's Compensation Board, the Board of Moving Picture Censors, and the Liquor Control Board. Similarly, under the federal Constitution administrative boards, such as the Interstate Commerce Commission, have been created. These agencies perform an administrative rather than a legislative or judicial function, their determinations by express statutory provisions being subject to review by the courts. Uniformly the federal Supreme Court has upheld the power of the state to confer discretionary powers upon such administrative officers or boards: *Davis v. Mass.,* 167 U. S. 43; *Wilson v. Eureka City,* 173 U. S. 32; *Gundling v. Chicago,* 177 U. S. 183; *People ex rel. Lieberman v. Van de Carr,* 199 U. S. 552.

The decisions of other jurisdictions reach the same conclusion. See *Keck v. Superior Court,* 293 Pac. (Cal.) 128; *People ex rel. Albrecht v. Harnett,* 221 App. Div. 487. In *Tryon v. Willbank,* 234 App. Div. 335, 339 (New York) the Court said: "While the hearing in such a proceeding [revocation of license] may be said to be quasi judicial, the act of the Commissioner is an administrative and not a judicial one." The legislature, in enacting the The Vehicle Code, has not delegated judicial powers to the Secretary of Revenue in authorizing him to revoke or suspend operators' licenses.

The remaining questions are easily disposed of. In the proceedings in the court below, the question arose whether the hearing was de novo, or to review the record as it existed when the petition under section 616 of the act was filed in the common pleas court. The section in question affords the answer. It says . . . "thereupon to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license or learner's permit under the provisions of this act." The language of the section clearly indicates that it is the duty of the court to hear de novo the witnesses of the Commonwealth and the witnesses of the licensee, and, from the testimony taken, to determine anew whether the operator's license should be suspended. The court below was in error when it required the testimony taken before the Secretary of Revenue or his representative to be made a part of the record. If the proceedings before it were in the nature of a certiorari, or a review of the action of the Secretary of Revenue to determine whether he had abused his discretion, then such testimony properly would be a part of the record of this case. But the act otherwise provides, and it may be used only collaterally to impeach the credibility of a witness.

The court below further erred in holding that in the present case there should be included the record of the criminal proceedings against appellee in the Quarter

Sessions Court; additionally that the Secretary of Revenue was precluded from suspending appellee's license by reason of his acquittal of the criminal charge.[6] The proceedings before the Secretary of Revenue are civil and administrative and not criminal, even though the basis of the action may be the commission of a crime. It has been the established rule that a criminal prosecution does not bar a subsequent civil or administrative proceeding based upon the same set of facts, nor does a judgment rendered therein have any probative value in subsequent proceedings beyond the mere fact of its rendition: *Wilson v. Wilson,* 100 Pa. Superior Ct. 451. This results from the nature of criminal proceedings and the type of proof required therein. In criminal proceedings the guilt of the accused must be established beyond a reasonable doubt. In a civil proceeding to revoke a license it is sufficient if the offense be established by a preponderance of the evidence; this distinction is pointed out by Mr. Justice SADLER in *Barach's Case,* 279 Pa. 89; see also *Summers v. Brewing Co.,* 143 Pa. 114; *Morch v. Raubitschek,* 159 Pa. 559.

For the reasons stated the decree of the court below is reversed, and it is ordered that the suspension order of the Secretary of Revenue of November 19, 1935, be and the same is hereby reinstated, such order to be effective for the period of one year from the date hereof, with allowance to appellee for such time that the order was operative prior to the date of the supersedeas entered in the court below. The costs to be paid by appellee.

Mr. Justice DREW dissents upon the ground that the case should be sent back for a new trial.

---

[6] This precise point has been considered recently by the Supreme Court of West Virginia in the case of *Steele v. State Road Com.,* 179 S. E. 810, where it was held the acquittal of a motorist of the charge of operating a motor vehicle while intoxicated did not preclude the Road Commission from revoking his license on the ground that he was unfit to operate an automobile.