## Healey's Appeal

*Lewis R. Long,* for appellant.

*Wayne E. Barber,* for Secretary of Revenue.

LAUB, J., June 9, 1941.—This comes before us on an appeal by defendant from the suspension of his automobile operator's license for an indefinite period of time by the Pennsylvania Department of Revenue, the reason assigned being that he is an "incompetent operator".

A hearing de novo was held before us on June 4, 1941. The facts are that on December 25, 1940, appellant was operating his automobile on a public highway known as route 12 in said county leading from the City of Bethlehem to the Borough of Nazareth. The weather conditions were clear and the roadbed was dry, according to the uncontradicted testimony of Officer M. H. Aulenbach of the Pennsylvania Motor Police. To the right of said public highway, and on the shoulder thereof, was one Paul Lahr, a minor, who was riding a bicycle. Appellant operated his automobile from off the black top macadam onto the shoulder, collided with the bicycle on which Paul Lahr was riding, causing the death of the said Paul Lahr according to the testimony of Dr. E. N. Seyfried.

William Honcz, a policeman of the Borough of Nazareth, testified that on the afternoon of December 25, 1940, appellant was under the influence of intoxicating liquors.

Dr. E. N. Seyfried, who made a medical examination of appellant that same afternoon shortly after the fatal accident in which he was involved, also testified that at the time of his examination appellant was under the influence of intoxicating liquors.

Mary Baltz, a witness for the Commonwealth, testified that before the accident she saw appellant driving his automobile a distance of a block away and that he was driving in a zigzag manner on the aforesaid public highway. Appellant admitted that he drank "a few beers" before he operated his automobile preceding the fatal accident.

Walter Fogel, Oliver Gerhart, Alfredo Travanni, and motor patrolmen M. H. Aulenbach and R. E. Dougherty all testified that on the afternoon of December 25, 1940, appellant was under the influence of intoxicating liquors and not fit to operate an automobile. Therefore, the weight of the evidence or the preponderance thereof convinces us that at the time in question appellant was under the influence of intoxicating liquors and not fit to operate his automobile by reason thereof.

The Commonwealth further offered in evidence the testimony of a deputy clerk of the court of quarter sessions to show, in support of its theory that appellant was an "incompetent operator", other cases in which he had appeared as a defendant, to wit, an indictment to no. 101, September sessions, 1936, where he was indicted for driving an automobile while under the influence of intoxicating liquors, and where a jury verdict returned on December 17, 1936, found him guilty, and he was sentenced to pay a fine of $200 and costs of prosecution. This sentence was certified to the Highways Department of the Commonwealth of Pennsylvania and his operator's license was revoked for one year in accordance with the act of assembly in such case made and provided.

The Commonwealth also offered in evidence an indictment against the appellant to no. 19, April sessions, 1938, wherein he was indicted for operating an automobile while intoxicated, and on June 16, 1938, the jury found him guilty, whereupon he was sentenced to a fine of $100, costs of prosecution, and a prison sentence of three years, which was suspended.

We have received in evidence these indictments above mentioned on the theory that they bore on the question of whether or not the Commonwealth was justified in suspending indefinitely appellant's automobile operator's license because he was an "incompetent operator".

"The permission to operate a motor vehicle upon the highways of the Commonwealth is not embraced within the term civil rights, nor is a license to do so a contract or a right of property in any legal or constitutional sense. Although the privilege may be a valuable one, it is no more than a permit granted by the state, its enjoyment depending upon compliance with the conditions prescribed by it, and subject always to such regulation and control as the state may see fit to impose": Commonwealth v. Funk, 323 Pa. 390, 395.

"The legislature in the exercise of the police power of the Commonwealth not only may but must prescribe *how* and *by whom* motor vehicles shall be operated on the highways. One of the primary purposes of a system of general regulation of the subject-matter, as here by The Vehicle Code, *is to insure the competency of the operators of motor vehicles.* [Italics ours.] Such a general law is manifestly directed to the promotion of public safety and is well within the police power. Even if the license were a right of property, which it is not, it would be held in subordination to such reasonable regulations by the state as are clearly necessary to preserve the safety, health and morals of the people. The enforcement of these regulations by revocation or suspension of the privilege is not the taking of property without due process of law": Commonwealth v. Funk, supra, p. 396.

"The power conferred upon the Secretary of Revenue to revoke or suspend operating privileges is administrative and not a judicial function": Commonwealth v. Funk, supra, p. 398.

"It has been the established rule that a criminal prosecution does not bar a subsequent civil or administrative proceeding based upon the same set of facts, nor does a judgment rendered therein have any probative value in subsequent proceedings beyond the mere fact of its rendition: *Wilson* v. *Wilson*, 100 Pa. Superior Ct. 451": Commonwealth v. Funk, supra, p. 400.

The Act of June 27, 1939, P. L. 1135, sec. 615.1, provides that the secretary may suspend the privilege of any person to apply for an operator's license after a hearing, before the secretary or his representative, that such person has committed any offense for the conviction of which mandatory revocation of license is provided in this act; that such person has committed any violation of the motor vehicle laws of this Commonwealth; that such person was operating any motor vehicle involved in an accident resulting fatally to any person.

Counsel for appellant took the position throughout the hearing that any evidence relating to offenses committed by appellant previous to the issuance and during the term for which the automobile operator's license issued to him was suspended was incompetent and irrelevant. With this contention we do not agree.

In Seila's Liquor License Case, 124 Pa. Superior Ct. 519, the Superior Court has decided otherwise, as is shown by the following:

"The questions incident to a violation of the liquor laws by a licensee during the term of his license do not become moot at the expiration of the license."

Counsel for appellant also contended that the Secretary of Revenue had no authority to suspend appellant's automobile operator's license for an indefinite period. With this contention we cannot agree. The statute above mentioned does not place any limitation upon the discretion of the Secretary of Revenue.

In the case of Purnell's Petition, 19 D. & C. 189, 190, Judge MacDade, of Delaware County, says as follows:

". . . from common experience it is a well-known fact that to operate an automobile today on the public highways one must be alert and able to understand and read the various signs denoting danger, etc., which the State has placed on the highways for the protection of the citizens. An automobile is in itself not inherently dangerous, but it is the operation of an automobile that does make it dangerous. Therefore, the Commonwealth in the best interests and protection of the people at large must make the proper regulations in the advancement of these safeguards."

Considering the sorry record of this appellant in the handling of his automobile operator's licenses in the past years and considering the fatality in which he became involved, we are of the opinion that a wise discretion was exercised by the Secretary of Revenue and that such wise discretion should be sustained by us.

Counsel for appellant also contended that appellant had not had his constitutional rights preserved before the examiner of the Department of Revenue. This, however, has no influence and no weight in the present appeal. The hearing was held de novo and a full opportunity given to appellant to present his side of the case.

"Where a licensee appeals to the court of common pleas, pursuant to the provisions of section 616 of The Vehicle Code, from the suspension of his license, and there is a hearing de novo, such hearing remedies the infringement of any constitutional right resulting from the fact that in the proceedings before the Secretary the testimony of the licensee and of the arresting officer was taken at different times and at different places, and it is not material that the licensee was not offered an opportunity to confront his accuser and to cross-examine him": Commonwealth v. Cronin, 336 Pa. 469.

Appellant relied upon the case of Kocher's License, 27 Pa. C. C. 432. However, this opinion can no longer

be considered good law, in view of the case of Seila's Liquor License Case, supra. Appellant, when on the witness stand, did not deny that he was under the influence of intoxicating liquors at the time he became involved in the accident that caused the death of Paul Lahr, but seemed to rest his entire appeal on the fact that his employment and the distance he lived therefrom made it absolutely necessary that he have the privilege of operating an automobile. With this contention we cannot agree. Under the police power vested in the Commonwealth of Pennsylvania, such a reason would not be sufficient to vest appellant with the privilege of operating his motor vehicle to the menace of the citizens of the Commonwealth using the highways which he might choose to traverse.

Upon the conclusion of the hearing de novo we are convinced by the weight or preponderance of the evidence as follows:

1. That appellant was under the influence of intoxicating liquors at the time he became involved in the fatal accident that caused the death of Paul Lahr, a minor.

2. That he was unfit to operate his automobile at that time.

3. That his past record as an automobile operator shows violations of the motor vehicle laws of the Commonwealth of Pennsylvania.

4. That there has been no abuse of discretion on the part of the Secretary of Revenue in suspending his automobile operator's license indefinitely, and that it is to the best interests of the citizens of the Commonwealth of Pennsylvania and any other citizens using the highways of said Commonwealth which appellant might choose to traverse.

It would be a sad commentary on the police power of the Commonwealth of Pennsylvania if citizens using its highways should be exposed to the dangers incident to the continued operation of an automobile by appel-

lant. His poor record as an automobile operator in the past and the recent fatal accident in which he was involved, due to his negligence, reveals him to be a distinct menace to the users of the highways of said Commonwealth. It therefore follows that the said Commonwealth must have the police powers necessary to meet the conditions created by the appellant.

And now, June 9, 1941, the order of the Department of Revenue, Bureau of Motor Vehicles, suspending appellant's automobile operator's license indefinitely, is affirmed. The costs of this proceeding are to be paid by appellant.