Commonwealth v. Gold

*John E. Stevenson*, for Commonwealth.

*Donald M. Bowman*, for defendant.

GRIFFITHS, J., July 1, 1954.—This matter is before the court on an appeal by petitioner, under the provisions of article VI, sec. 616 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §193, from an order of the Secretary of Revenue suspending his operator's license for a period of 90 days. After hearing the case de novo, the court makes the following

### Findings of Fact

1. Petitioner was arrested by a Pennsylvania State policeman on August 17, 1953, at approximately 2 a.m., while he was traveling south toward Philadelphia on Route 309, in West Rockhill Township, near Sellersville, Bucks County, for exceeding the maximum speed limit of 50 miles per hour.

2. For a period of about one-half hour prior to the arrest, petitioner had been traveling at a speed of approximately 55 miles per hour.

3. The night was clear and dry.

4. During the one-half hour period preceding the arrest, there were practically no other vehicles upon the highway in either direction.

5. The arrest occurred on the open highway.

6. At the place of arrest the highway is three lanes.

7. There was no evidence of recklessness in the manner in which petitioner was operating his vehicle at the said time and place.

8. Petitioner received a summons to appear before a justice of the peace on the charge of speeding; he waived a hearing, did not appear and paid a fine of $13.50 and did not appeal the fine imposed.

9. Prior to August 17, 1953, petitioner had been operating a motor vehicle for over 16 years without having been arrested for speeding or any other traffic violation.

10. Petitioner had travelled between 15,000 and 20,000 miles a year.

11. At the time of the arrest, petitioner had been on the highway between nine and ten hours, returning from Buffalo, N. Y., as the result of an emergency call from his sister in Philadelphia that his father had been suddenly stricken with illness. Petitioner, a day before leaving to return to Philadelphia, had gone with his wife to Buffalo where he planned to vacation with her and her family for two weeks. She did not accompany him on his return to Philadelphia. Petitioner's father actually had a heart attack on the occasion of the emergency call to him and was confined to bed for about 10 days thereafter and had had two prior heart attacks.

12. Petitioner is an attorney-at-law and drives his automobile eight to ten hours each week in the practice of his profession.

13. Petitioner's father, because of his physical condition, is unable to operate a motor vehicle, and petitioner assists his father in the latter's real estate business in collection of rents, etc., two to four nights a week. There is no one else in the employ of his father except his married sister, who would not be available to do the evening work.

14. Petitioner's exceeding the speed limit on the occasion in question was a result of inadvertence on his part and was not an intentional violation by him.

15. The emergency call to which petitioner was responding at the time of the arrest created an extenuating circumstance.

16. Suspension of petitioner's driving privileges would cause economic hardship to the petitioner and his ailing father.

4

## Discussion

On an appeal by the operator of a motor vehicle from the action of the Secretary of Revenue in suspending his driver's license, the merit of the suspension is a matter for the court's independent determination. The rule was early recognized (Commonwealth v. Funk, 323 Pa. 390, 399 (1936)) and it has been uniformly followed and applied: Commonwealth v. Wagner, 364 Pa. 566, 569 (1950) and the 11 cases therein cited.

The late Mr. Justice Patterson said in Handwerk Automobile License Case, 343 Pa. 263, 267 (1944):

"The obvious intent of the legislature was to vest in the several courts of common pleas broad discretionary power. . . . In the exercise of the broad power thus conferred by the legislature, the courts are to administer justice according to the evidence and circumstances presented. . . ."

"The matter of license suspension must necessarily rest in the sound discretion of the Court," wrote Mr. Justice Jones in Commonwealth v. Wagner, supra, page 572.

We know of no subsequent decision of our Supreme Court which has changed the above referred to law.

In these cases the court must discriminate between circumstances in which violations are committed. In the case now before us, petitioner was traveling 55 miles per hour on an open highway at 2 a.m. on a clear, dry summer night. He had just taken his wife to Buffalo from Philadelphia for a two-week vacation and almost immediately upon arrival in Buffalo was summoned to return to his father's bedside. His father had already had two heart attacks and now was experiencing a third. He had been on the road for several hours. There was practically no other traffic at the time. The officer testified there was no evidence of reckless operation. There is no question in the court's

mind but that petitioner was not cognizant of this technical violation at the time of the arrest and the violation, for which he was fined $13.50, was unintentional on his part and a result of inadvertence. He testified about the time of the arrest he had looked at his speedometer and it read about 55 miles per hour and he slowed down. A driver cannot be expected to keep his eyes glued to his speedometer. It is his duty rather to keep them on the road ahead. A technical violation under the circumstances above recited should not carry with it a suspension of the license to drive.

Furthermore such suspension, in this case, as an additional makeweight, would result in economic hardship.

The case of Commonwealth v. Matil, 373 Pa. 404 (1953), relied on by the Commonwealth as authority for the suspension herein, involved a speed of 70 miles per hour, petitioner therein had a previous arrest for speeding, and as stated in the opinion by Mr. Justice Allen M. Stearne, at page 406, in reversing the lower court, "the learned court below revoked the suspension and restored the license solely because of economic hardship."

We have no difficulty in discriminating between the circumstances in which the violation occurred in the Matil case and the one now before us.

The court, in its discretion, cannot find the suspension to be justified under all the circumstances presented.

### Conclusions of Law

1. Petitioner's violation of the provision of The Vehicle Code as to speed was unintentional, as a result of inadvertence and occasioned by responding to an emergency.

2. Upholding the order of the Secretary of Revenue in suspending petitioner's driving license for 90 days

would result in economic hardship to petitioner and his ailing father.

3. The appeal should be sustained.

Wherefore, the court makes the following

### Order

And now, July 1, 1954, the appeal of Albert H. Gold, petitioner above named, from the order of the Secretary of Revenue in suspending his driver's license for a period of 90 days is sustained, the said order of the Secretary of Revenue is reversed and petitioner's driver's license is reinstated.