## Commonwealth v. Moll

*Robert T. Weniger*, for Commonwealth.
*David M. Boyd*, for appellant.

BODIE, P. J., August 20, 1956.—This case comes before the court on an appeal from the order of the Department of Revenue suspending the operator's license of defendant, Edwin J. Moll, for a period of 15 days for a violation of the speed laws of the Commonwealth.

The facts in the case, which are undisputed, are as follows: On July 21, 1955, at 4:40 p.m., defendant, Edwin J. Moll, accompanied by his wife, was driving a 1955 Ford pick-up truck on Route 315 in Luzerne County, which is a four-lane highway. The traffic was light and weather fair. Trooper Stephen J. Hynick followed defendant's truck for one and one-half miles and then checked him for one mile at 70 miles per hour. The speedometer on the truck was disconnected, and defendant did not deny the speed and paid a fine and costs by mail.

Defendant is engaged in the automobile business, drives about 25,000 miles per year and has had no previous arrests.

This is the first time an appeal has been before the court under the new regulations formulated by the Secretary of Revenue.

The Vehicle Code of May 1, 1929, P. L. 905, art. VI, sec. 615, and various amendments thereto, 75 PS §192, provides that: "(b) The secretary may suspend the operator's license or learner's permit of any person, after a hearing before the secretary or his representative, whenever the secretary finds upon sufficient evidence:

"2. That such person has committed any violation of the motor vehicle or tractor laws of this Commonwealth."

The act also provides for an appeal from such suspension to the court of common pleas of the county in which the operator resides: 1929 P. L. 905, art. VI, sec. 616, and amendments thereto (75 PS §193).

The greater number of offenses for which suspensions were made was for "exceeding the legal speed limit", and the department adopted the policy that a 90-day suspension was mandatory for a speed violation rather than discretionary as provided in the act.

In fact, the printed form which the department sent to the speed violators for them to make the "Operator's Statement of Defense" was headed with the following:

"NOTE: A person who has been arrested for exceeding the speed limit on the highways of Pennsylvania may either request a personal hearing or submit this statement in lieu of his/her personal appearance. In every case, operating privileges will be suspended for a ninety day period. The Pennsylvania operator's license *must be returned* with the completed affidavit."

Thus, if the "Operator's Statement of Defense" was filled out and sent in, the license of the operator had to be returned with it, resulting in an immediate loss of the operator's license before the affidavit of defense was even seen by the department.

If a hearing was requested by the operator, his case was heard by an agent of the Secretary of Revenue

and invariably he received a 90-day suspension. The notice to the operator states "in every case operating privileges will be suspended for a 90-day period".

As a result of the policy of the department, licenses were suspended without consideration of the facts and circumstances involved, in spite of frequent decisions of the Supreme Court that such action was not in accordance with the law, which made such decisions discretionary and not mandatory.

This interpretation by the department resulted in many appeals to the courts, a large majority of which were sustained. It also resulted in a reluctance on the part of the police officers to make arrests for speeding because they lacked the heart and conscience (yes, they do have them) to see an operator lose his license for 90 days when traveling on the open highway at 55 or 60 miles per hour without any recklessness being shown or any person or vehicle being endangered.

The motor clubs, in the interest of their members, became vocal at this apparent misinterpretation of the law which they felt perpetrated an injustice upon their members and recommended that the law be amended and a point system, such as used successfully in some other States, be set up to govern the suspension of licenses.

While we believe it would have been better for the legislature to amend the law in this case, the Secretary of Revenue felt that such a regulation and point system could be set up by this department within the existing law. In February 1956 the secretary promulgated a point program governing license suspensions in which the following regulations applied for the offense of speeding:

1. On highways or streets where maximum allowable speed is 50 miles per hour or less (except on Pa. Turnpike System):

| MPH in excess of speed limit (but only if speed is 50 mph) | 1st Offense | 2nd Offense | 3rd Offense |
|---|---|---|---|
| 5 to 15 .............. | Warning | 15 | 30 |
| 16 to 25 .............. | 15 | 30 | 90 |
| 26 to 35 .............. | 30 | 90 | 150 |
| 36 and over .......... | 60 | 90 | 180 |

2. On highways or streets where maximum allowable speed is more than 50 miles per hour and on the Pa. Turnpike System:

| MPH in excess of speed limit | 1st Offense | 2nd Offense | 3rd Offense |
|---|---|---|---|
| 5 to 10 .............. | Warning | 15 | 30 |
| 11 to 20 .............. | 15 | 30 | 90 |
| 21 to 30 .............. | 30 | 90 | 150 |
| 31 and over .......... | 60 | 120 | 180 |

In adopting this system, the secretary set up a specific penalty for speeding based entirely on the rate of speed and the number of the offense, instead of the previous practice of a 90-day suspension regardless of the speed or circumstances. The facts surrounding the speed violation apparently are no longer a factor in the suspension of the operator's license; the rate of excess speed being the sole fact governing the suspension and length thereof. It has lessened the penalties for first offenders and has laid down a schedule which informs the motorist of the exact penalty to expect in case of a violation.

It does not change the law as to the duty of the court to hear the appeal "de novo".

"Upon an appeal from a suspension by the Secretary of Revenue of an operator's license, it is not only the duty of the court to hear *de novo* the witnesses for the Commonwealth and those for the licensee, but it is also the court's duty 'to determine anew (*from the testimony taken*) whether the operator's license should be suspended': See Commonwealth v. Funk [323 Pa. 390], quoted in like connection a number of times and uniformly followed." Bureau of Highway Safety v. Wright, 355 Pa. 307, 310.

In the present case, Edwin J. Moll was operating a 1955 Ford pick-up truck at a speed of 70 miles per hour, 20 miles per hour over the speed limit. There was no emergency which would justify or excuse such high speed and a 15-day suspension is not an excessive penalty. The need or necessity of the operator's license for the purpose of carrying on business has been held by the Supreme Court to be insufficient reason to sustain an appeal from suspension.

Under all of the facts in the case, the appeal must be dismissed.

### Decree

Now, to wit, August 20, 1956, the within appeal is hereby dismissed at the cost of appellant.