## Newmaker License

*W. Scott Calderwood,* for appellant.

*E. H. Beshlin,* for Commonwealth.

FLICK, P. J., December 28, 1961.—This is an appeal from an order of the Secretary of Revenue suspending appellant's motor vehicle operating privileges. The suspension was made under authority of section 618(a) of the Vehicle Code of April 29, 1959, P. L. 58, on the ground that appellant is an incompetent operator, to continue for an indefinite period, from October 4, 1961, until sufficient proof of competency is established.

Notice of suspension was received by appellant on September 30, 1961. Under authority of section 620 of the Vehicle Code, appellant filed his petition in the court of common pleas on October 3, 1961, and an order was made allowing the appeal, setting a hearing for December 11, 1961, with 30 days written notice thereof to the Secretary of Revenue by certified mail, and providing that it act as a supersedeas. On November 4, 1961, counsel for the Commonwealth entered his appearance.

At the hearing, appellant testified and his counsel placed in evidence the notice of suspension and a letter from the Director of Enforcement, Bureau of Traffic Safety, Department of Revenue, dated October 17, 1961. There was also placed in evidence, by agreement,

a copy of the report of the Warren State Hospital concerning appellant at the time of his release from said hospital. No testimony was offered on behalf of the Commonwealth, reliance being had on the facts averred in appellant's petition, showing that appellant voluntarily committed himself to the Warren State Hospital and was released after three months treatment as an alcoholic. Thereafter, argument was made to the court, briefs were filed in support thereof, and the matter is ready for decision.

From the pleadings and evidence, the court makes the following:

### Findings of Fact

1. Appellant is John W. Newmaker, an individual 39 years old, residing at 510 W. Third Avenue in Warren Borough, Pennsylvania. He is a life-long resident of Warren, is married, and has children aged 14, 12 and 8 years.

2. He owns two automobiles, one primarily for his own use and one for his wife.

3. He has been operating motor vehicles for the past 23 years, since he was 16 years old.

4. His operator's license has never been suspended or revoked prior to the suspension from which he has now appealed.

5. He has never had a hearing before any bureau of traffic safety, nor has he ever been charged with any violation of the Vehicle Code or traffic regulations, except two minor infractions such as passing a stop sign.

6. He is plant superintendent or manager of Phoenix Furniture Company. The plant is located about three miles from his home and he customarily drives to work between 7:00 and 7:30 A.M. each morning.

7. The parent organization of the company for which appellant works is located in Jamestown, New York,

22 miles from Warren, Pennsylvania, and he is frequently required to drive there, sometimes three or four times a week.

8. On June 8, 1961, appellant voluntarily committed himself to the Warren State Hospital for treatment as an alcoholic. Prior to that time he had been using alcoholic beverages to excess. Although he did not drink at home, he had become a steady drinker every day and this created trouble in his home. He was neglecting his wife and children, and with some family pressure he was persuaded to commit himself for treatment of his drinking problem.

9. Because appellant's commitment was voluntary, he could have obtained his release from the Warren State Hospital at any time, but he remained in the hospital for three months, receiving treatment, and was released on September 8, 1961. This period of time is the customary stay for a person committed by the court under the Habit Act, when such person has shown adequate improvement and the hospital authorities believe his alcoholism is under control.

10. The treatment received by appellant consisted chiefly of attending group therapy sessions twice a week and meetings of Alcoholics Anonymous once a week. On Wednesdays and Sundays, he was released and spent most of the time with his family, his wife being responsible for him. Wednesdays he would go to the plant of Phoenix Furniture Company for a while, and at times he played golf and did other things which he normally would have done.

11. Since June 8, 1961, a period of five months and three days at the time of the hearing, appellant has not consumed any alcoholic beverages of any kind.

12. At the time of his release, the hospital record shows that in the opinion of Dr. James Suess, Clinical Director of the Warren State Hospital, appellant was

competent to operate a motor vehicle provided he did not drink. Cross examination by counsel for the Commonwealth shows this as follows: "Q. You understand what the record in the hospital shows that, mainly, that it is O.K. for you to drive if you keep off alcohol? A. That's correct" (record page 11).

13. Since his release, appellant has attended meetings of Alcoholics Anonymous on an average of at least once a week, held at the Warren State Hospital in North Warren on Saturday night, or in Warren on Tuesday nights. He has also attended a weekend meeting in Chautauqua, New York, and a three day seminar in Buffalo, New York. He drives his car to these meetings. He has had no alcoholic drinks. He has felt better, feels more alert, and he thinks his reactions are better, since he stopped using alcoholic beverages.

14. Appellant has readjusted his life, spending quite a bit more time with his family, and is confident that he has solved his problem with alcoholic beverages to such an extent that he can refrain from using the same.

15. Appellant has not consumed any alcoholic beverage for more than five months prior to the hearing in court. He does not intend to resume any use of alcohol and is confident that the steps he has taken and is taking to change his habits and his way of life, are such that he will not resume the use of alcoholic beverages in the future. Appellant has no question in his mind about this.

16. On September 29, 1961, without a hearing, the Secretary of Revenue suspended the privilege of John W. Newmaker to operate a motor vehicle, effective October 4, 1961, on the ground that he is an incompetent operator. The term of this suspension is "until sufficient proof of competency is established." He has appealed to the court of common pleas.

17. On October 13, 1961, counsel for appellant wrote to the Bureau of Traffic Safety asking what proof

appellant could provide to establish his competency to operate a motor vehicle. The reply states that appellant will be considered incompetent, and no proof to the contrary will be considered, for a period of six months after appellant's release from the Warren State Hospital. The letter, in full, reads as follows:

"This will acknowledge your letter of October 13, 1961, concerning the operating privilege of your client, Mr. John W. Newmaker of 510 Third Avenue, Warren, Pennsylvania.

"Kindly be advised that our action of October 4, 1961, suspending his operating privilege as an 'Incompetent Operator' was as a result of a medical report in our files noting the fact that he had been a patient in the Warren State Hospital due to an illness associated with alcoholic addiction and that he was released in September.

"When we formulated our program covering the alcoholic, we asked for and received the opinions of many of the leading doctors specializing in the field of alcoholism. It was the majority of opinion of that group that a period of at least six months should elapse since an individual's release from the hospital before issuing a license in his or her name. If an investigation at that time proves that the subject has overcome his former drinking habits, immediate consideration is then given to the restoration of the individual's operating privilege. No exceptions are ever made to this policy.

"In view of the above, we regret that we cannot grant further consideration to Mr. Newmaker's case at this time."

*Discussion*

The highways of Pennsylvania are the property of the people and the power to regulate their use is incident to the general police powers of the Common-

wealth. Since 1903, various codes of regulation have been enacted by the legislature, the latest being the Vehicle Code of 1959, 75 PS §101-1501. See Commonwealth v. Funk, 323 Pa. 390.

Qualifications for issuance by the Secretary of Revenue of a license to operate a motor vehicle on the public highways are set forth in the Vehicle Code. An operator's license is a privilege and not a property right, and the Vehicle Code contains various provisions for revocation and suspension of licenses. Such revocation or suspension is not a "sentence" or "penalty." A hearing on the question of suspension of an operator's license is a civil proceeding: Levy Motor Vehicle Operator's License Case, 194 Pa. Superior Ct. 390, 393, and cases there cited.

The operator's license of John W. Newmaker was suspended by the Secretary of Revenue by authority of article VI, sec. 618(a) (1), which provides: "The secretary may suspend the operating privilege of any person, with or without a hearing before the secretary or his representative . . . whenever the secretary finds upon sufficient evidence: (1) That such person is incompetent to operate a motor vehicle or tractor, or is afflicted with mental or physical infirmities or disabilities rendering it unsafe for said person to operate a motor vehicle or tractor upon the highways." 75 PS §618(a) (1).

Notice of the suspension, on a form supplied by the Department of Revenue, was mailed to appellant and received by him on September 30, 1961. It bears the heading: "Official Notification of Withdrawal of Motor Vehicle Privileges" and was placed in evidence as appellant's exhibit no. 1.

The notice provides that the reason for withdrawal is that appellant is an "incompetent operator under section 618(a) (1)." The effective date is October 4,

1961, and the term of suspension is "until sufficient proof of competency is established."

After receiving the notice, appellant consulted his attorney. Convinced that he could continue to avoid the use of alcoholic beverages as he had since his release from the hospital, and that he was competent to operate a motor vehicle, and needing to drive for business purposes and also to continue to attend meetings of Alcoholics Anonymous, appellant executed the petition to this court appealing from the action of the Secretary of Revenue suspending his operator's license. Such action was timely taken. It is authorized by section 620 of the Vehicle Code which provides: "Any person, whose operator's license . . . has been suspended . . . shall have the right to file a petition, within thirty days (30) thereafter, for a hearing in the matter in the court of common pleas of the county in which the operator . . . resides. . . . Such courts are hereby vested with jurisdiction, and it shall be their duty, to set the matter down for hearing upon thirty (30) days written notice to the secretary, and thereupon to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license . . . by the secretary under the provisions of this act." 75 PS §620.

On appeal, the court of common pleas may sustain or reverse an order by the Secretary of Revenue suspending a motor vehicle operator's license: Anen Motor Vehicle Operator's License Case, 194 Pa. Superior 397, 382, but the hearing is not for the purpose of reviewing the evidence taken before the secretary and his action thereon. The hearing is de novo. The function of the court of common pleas is clearly stated in the case of Commonwealth v. Strobel, 375 Pa. 292, pages 294 and 295, as follows: "In Commonwealth v. Cole, 350 Pa. 369, 371-372, 39 A. 2d 361, Mr. Justice PATTERSON said for this court in this connection—'All of these

[cited] cases hold that an appeal to the court is not for the purpose of reviewing the evidence taken before the secretary, and his action thereon, but to hear evidence and determine, *in the exercise of the court's sound discretion and in the furtherance of justice,* whether the license should be suspended' (Italics supplied). After the appeal has been heard de novo, it is the duty of the hearing judge to make findings of fact from the testimony whereon he may reasonably base his ultimate conclusion as to whether the suspension of the operator's license was warranted; see Commonwealth v. Eisenmenger, 365 Pa. 127, 130, 74 A. 2d 173, and cases there cited. As stated more recently by Mr. Justice STEARNE in Commonwealth v. Emerick, 373 Pa. 388, 395, 96 A. 2d 370—'Following such hearing *de novo* the hearing judge is required to make his independent findings of fact and exercise his discretion whether or not a suspension should be decreed.' " See also Commonwealth v. Wagner, 364 Pa. 566, 570.

This court's duty is, therefore, "to determine independently, on the basis of the testimony adduced at the hearing on appeal, whether the suspension was merited:" Commonwealth v. Herzog, 359 Pa. 641, 643.

The evidence adduced at the hearing is shown in the findings of fact above set forth. On the basis of such facts, it is the court's opinion that the suspension is not merited.

To prove appellant was incompetent to operate a motor vehicle, the Commonwealth produced no evidence but relied on the fact that appellant had voluntarily committed himself to the Warren State Hospital as an alcoholic, was treated for three months for that dread disease, and released on September 8, 1961. This may be sufficient evidence to prove a prima facie case of incompetency, as of the date of the alcoholic's release, inasmuch as there is no known cure for alcoholism, i.e., one drink invariably results in compulsive drink-

ing to the point of intoxication: Stewart License, 7 D. & C. 2d 702, 704.

Certainly the Bureau of Traffic Safety takes the position that an alcoholic is incompetent on his release from an institution where he has been treated. In the court's opinion, this view is reasonable and suspension of the alcoholic's license is justified *when there is no evidence to support competency.* Without evidence that the alcoholic has a strong desire to stop drinking, that he understands the nature of his problem and realizes that he cannot be a social drinker, and that he is successfully carrying on his life without the use of alcoholic beverages, he or she is in much the same situation as the epileptic, concerning whom the Supreme Court of Pennsylvania has said: "There will, no doubt, be common agreement that a person afflicted with epilepsy is 'incompetent or unable to exercise reasonable and ordinary control over a vehicle' on the public highway:" Commonwealth v. Irwin, 345 Pa. 504, 507.

The policy of the Bureau of Traffic Safety, as stated in finding of fact no. 17 (appellant's exhibit no. 2), is based on the belief that it would not be safe to restore the operating privileges of an alcoholic until at least six months have passed after his release from the hospital. Proof that he has overcome his former drinking habits will not be considered during the six month period. As shown, this belief is based on the majority opinion of a group of leading doctors specializing in the field of alcoholism. The opinions of these specialists were not concerned with John W. Newmaker as an alcoholic. They were not given in court. They were general statements of opinion solicited by the bureau when its program covering alcoholics was being decided upon.

One cannot quarrel with this method of obtaining information on which to base a policy as to the operating privileges of alcoholics, generally, after treatment

and release. However, the Vehicle Code does not provide that the operating privileges of an alcoholic shall be suspended for a six months period after his release from the institution where he has been treated. It is the Secretary of Revenue who must "find upon sufficient evidence" that the alcoholic is incompetent to operate a motor vehicle. Is commitment, treatment and release "sufficient evidence" in every case, without exception, regardless of what other evidence may be produced?

In the instant case, as in Stewart License, supra, the hospital records show that appellant is a competent operator if he does not drink. This fact is completely ignored by the Secretary of Revenue. He takes the position that, without exception, hospital treatment for alcoholism is conclusive proof of incompetency for at least six months after release from the hospital. This proposition is flatly contradicted by the facts of the instant case.

After release, the licensee must prove his ability to refrain from using alcohol. In the instant case he has done this. Time can be important in the treatment of alcoholism, but the attitude of the alcoholic is much more important. His desire to stop drinking, to achieve sobriety; his conviction that he cannot safely take even one alcoholic drink because his disease will compel him to take more; these are the vital ingredients to restore competency as a motor vehicle operator.

An arbitrary minimum of six months for control of alcoholism and the restoration of competency to meet requirements of the Vehicle Code may be a reasonable *average* lapse of time, although not all of the specialists consulted by the Bureau of Traffic Safety agreed on this, but it cannot fit every case. Some alcoholics will require a longer period and some a shorter period. The findings of fact, based on the evidence before the court in the instant case, clearly show that the "policy from

which no exceptions are ever made" is completely arbitrary when applied to John W. Newmaker. The hospital report did not find him incompetent. On the contrary, he was found to be "Okay to drive if he remains off alcohol." He has remained off alcohol, five months and three days on the date of the hearing, and all of the evidence indicates that he will continue to refrain.

Regular attendance at the weekly meetings of Alcoholics Anonymous is a vital matter for its members. Appellant started attending when he was in the hospital. Now he requires driving privileges to attend the meetings, as well as to attend to the duties of his business at the Warren plant and the parent company in Jamestown, New York. To deprive him of such privileges, would, in the language of Judge Dannehower in Stewart License, supra, page 706: "handicap and discourage appellant in her [his] desire to cure herself [himself] of alcoholism and would not serve any public purpose."

As the court is to determine whether the operating privileges of John W. Newmaker should be indefinitely suspended on grounds of incompetency, and the Commonwealth has failed to establish incompetency under all the evidence, his appeal from the suspension made by the Secretary of Revenue must be sustained.

Wherefore the court makes the following

*Order*

Now, December 28, 1961, for the reasons stated in the foregoing opinion, and pursuant to the authorities therein cited, and upon consideration of the arguments and briefs of counsel and the entire record of this case, it is hereby ordered that the appeal of John W. Newmaker is sustained; that the order of the Secretary of Revenue dated September 28, 1961, suspending the operating privileges of John W. Newmaker indefinitely, from October 4, 1961, until sufficient proof of

competency is established, be and the same is hereby reversed, and his operator's license shall be reinstated.