## Commonwealth v. Zeigler

*Harry B. Thatcher,* for appellant.
*Robert B. Brugler,* for Commonwealth.

ZIEGLER, P. J., October 30, 1972.—This matter comes before the court on appeal from a two-month suspension of appellant's motor vehicle operating privileges by the Secretary of the Department of Transportation of the Commonwealth of Pennsylvania.

Appellant's operating privileges were suspended pursuant to paragraphs (a) and (d) of section 604.1 of The Vehicle Code of April 29, 1959, P. L. 58, as amended, 75 PS §604.1(a) and (d), (hereinafter called code), the relevant portions of which provide as follows:

"(a) In addition to the other provisions of this act relating to the suspension or revocation of operating privileges, in the event that a licensed junior operator is involved in an accident for which he is partially or fully responsible in the opinion of the secretary, pleads guilty or nolo contendere, or is convicted of any violation of 'The Vehicle Code,' or violates subsection (c) hereof, the secretary may, after a hearing, suspend the operating privileges of such junior operator until he has reached the age of eighteen (18) years, or for any other period of time.

"(d) In addition to the other provisions of this act relating to the suspension or revocation of operating privileges, in the event that a regular operator under the age of eighteen (18) . . . pleads guilty or nolo contendere, or is convicted of any violation of 'The Vehicle Code,' the secretary may, after a hearing, suspend the operating privileges of such operator or issue him a junior operator's license in lieu of or in addition to said suspension."

Appellant appealed from such suspension pursuant to section 620 of the code, the relevant portions of which provide as follows:

"Any person whose operator's license or learner's permit has been suspended, or who has been deprived of the privilege of applying for an operator's license or learner's permit under the provisions of this act, shall have the right to file a petition, within thirty (30) days thereafter, for a hearing in the matter in the court of common pleas of the county in which the operator . . . resides. Such courts are hereby vested with jurisdiction, and it shall be their duty, to set the matter down for hearing upon thirty (30) days' written notice to the secretary, and thereupon to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license privilege . . . under the provisions of this act."

After offering opportunity for a hearing de novo, we make the following

## FINDINGS OF FACT

1. Appellant is William Max Zeigler, resides at Church Hill Manor, Reedsville, Pa., and is 19 years of age.

2. On June 20, 1969, appellant was observed operating a vehicle southwardly on Main Street, formerly

U. S. Highway Route No. 322, in the Village of Yeager-town, Township of Derry, Mifflin County, Pa., at a point just north of the Lutheran Church.

3. Said point of observation is located approximately one-half mile south of bridge spanning Kishacoquillas Creek and connecting the Township of Brown and Township of Derry.

4. Said village is a business or residence district, the northern limits of which are coterminous with the northern limits of said Township of Derry.

5. Said Main Street is a two-way street.

6. Upon approach to said street and village from the north, there was located on the east or left-hand side of said street 25 feet south of said bridge a 35-mile speed sign facing north; there were four such signs on the west or right-hand side of said street facing north, the first of which was located approximately one-eighth mile south of said bridge, the last of which was located 50 feet north of said point of observation and the other two of which were located somewhere in between, and that there were more of such signs located along the west or right-hand side of said street south of said point of observation.

7. At or north of the point of observation, police officers, by stop watch and measured strip, determined that appellant traveled one-eighth of a mile in nine seconds or at the approximate rate of 50 miles per hour and apprehended him for violation of section 1002-(b)(4) of the code.

8. Pursuant to such apprehension, John W. Stuck, one of such officers, charged appellant before Justice of the Peace John M. Amick with such violation.

9. Appellant pleaded guilty to said charge by payment of $10 fine and costs on July 5, 1969.

10. Said secretary, after departmental hearing,

suspended appellant's operating privileges for a period of two months effective December 10, 1969.

## DISCUSSION

Scope of review on appeal from a section 604.1 of The Vehicle Code suspension is the same as scope of review on appeal from a section 618 suspension.[1] As to the latter, it has been firmly established by numerous decisions of our Supreme Court that it is the duty of the court to hear de novo. See cases cited in Commonwealth v. Wagner, 364 Pa. 566, 73 A. 2d 676 (1950). The most cited of them is Commonwealth v. Funk, 323 Pa. 390, 186 Atl. 65 (1936). There, the court held that the determination of "whether the petitioner is subject to suspension of operator's license or learner's permit under the provisions of this act" indicates that it is the duty of the court to hear de novo the witnesses of the Commonwealth and the witnesses of the licensee, and, from the testimony taken, to determine anew whether the operator's license should be suspended. For our categorization of decisions on appeals from the secretary, reference should be made to our opinion in Commonwealth v. Sunderland, 63 D. & C. 2d 252, 3 M.C.L.J. —, filed October 27, 1972, May term, 1972, no. 25.

Section 1002(b)(4) of the code, pursuant to which appellant was charged as aforesaid, provides as follows:

"(b) Subject to the provisions of subsection (a) of this section, speeds in excess of the maximum limits hereinafter provided shall be unlawful:

" . . .

---

[1] Sakala Motor Vehicle Operator License Case, 219 Pa. Superior Ct. 174, 280 A. 2d 596 (1971).

"(4) Twenty-five (25) or thirty-five (35) or forty (40) miles an hour speed limit: All vehicles, except those restricted by this act to lower maximum speeds, within business or residence districts, or public park areas, where official signs, erected by the proper authorities, on the right-hand side of the highway facing the traffic to be controlled, or on the left-hand side of one-way streets, are displayed. An official sign shall be similarly placed one-eighth (⅛) of a mile before the beginning of the limited speed zone indicating the maximum speed to be observed in such limited speed zone. This limit shall be observed for a distance beyond said sign for not more than one-eighth (⅛) of a mile. An additional sign shall be placed at intervals not greater than one-eighth (⅛) of a mile, and any extension of such limited zone shall be marked by additional signs in like manner. At the end of such limited zone, there shall be an official sign, similarly placed as to traffic, indicating the end of the limited zone."

Appellant contends:

1. That the burden was on the Commonwealth to prove that reduced speed zone signs were placed on the right-hand side of the highway facing southbound traffic at intervals not greater than one-eighth of a mile within the limited zone and that the Commonwealth failed to so prove.

2. That the burden was on the Commonwealth to prove that reduced speed zone signs were placed on both sides of the highway facing north at the northern beginning of the reduced speed zone in accordance with section 704.2 of regulations adopted by the Secretary of the Pennsylvania Department of Highways on December 1, 1967, and that the Commonwealth failed to so prove.

We agree with appellant's first contention. Commonwealth v. Anspach, 134 Pa. Superior Ct. 369, 4

A. 2d 203 (1939), involved an appeal from conviction by the Court of Quarter Sessions of Schuylkill County of violation of the same section here involved. The Superior Court's opinion pointed out that there was no testimony that speed limit signs were erected and, in reversing the conviction, made four relevant statements as follows:

1. "If the signs had been placed in accordance with the provisions of the statute, proof should have been made.

2. "The placing of the official signs . . . is a condition precedent to prosecution for violation" of said section.

3. "The erection and display of the signs as prescribed are primary requisites.

4. "The speed limitation only applies to the limited zone so marked. In the absence of proof that a zone was so marked, it cannot be established that appellant violated" said section.

Anspach was followed in a nearly identical situation by the Court of Quarter Sessions of Mercer County in Commonwealth v. Miller, 44 D. & C. 2d 524 (1968). It had been followed in a suspension case by the Court of Common Pleas of Bucks County in Commonwealth v. Pluta, 26 D. & C. 2d 693 (1961). It had also been followed by the Court of Common Pleas of Centre County in Commonwealth v. Beidler, 24 D. & C. 2d 352 (1961), where Judge Campbell held in an appeal from a summary conviction under said section that it must be proven that all signs in a speed zone are no more than one-eighth of a mile apart and that proof of erection and display of official signs is a condition precedent to prosecution. To the same effect were Commonwealth v. Beam, 60 Lanc. 311 (1966), and Commonwealth v. Markowitz, 32 Lehigh 501 (1968). The only case which we found which appeared to

be contrary to appellant's contention was Commonwealth v. Jones, 86 Montg. 115 (1965). However, it involved a motion to quash an information under said section rather than a post-conviction proceeding and held that it was not necessary for the information to allege that official signs were posted. Cases decided under section 1002(b)(4) should be distinguished from cases decided under 1002(b)(8) and (9) where it is provided that signs should be "not less than one-eighth (⅛) of a mile apart." "Not less than" cases have unanimously held that such language is directory and not mandatory, since speed limits were enlarged thereby rather than restricted.

Here, there was no testimony that the signs were "no more than" one-eighth of a mile apart. Hence, we conclude that Anspach and the cases which followed it direct the course we must take in agreeing with appellant's first contention.

We disagree with appellant's second contention. Section 704.2 of said regulations is entitled Speed Limit Group (R 2 Series) and provides as follows:

"The numerical speed limit displayed on signs in the Speed Limit Group shall be the limits established under Section 1002 of the Vehicle Code.

"Local Authorities. Local authorities are authorized by Section 1002 (b) of the Vehicle Code to establish fifteen (15) or twenty (20) miles an hour speed limit on any street not a state highway, or not a through highway or main artery of traffic in a residence district; or twenty-five (25) or thirty-five (35) or forty (40) miles an hour speed limit within business or residence district, or public park areas.

"Approval of the Secretary of Highways must be obtained before any speed limit can be established on a state highway.

"When the speed limit has been reduced under this section, the speed limit signs shall be erected on both the right and left side of the roadway or street at the beginning of the reduction and on the right sides of the roadway or street at intervals not greater than one-eighth (⅛) of a mile (660 feet). At the end of such limited zones a speed limit sign indicating the speed limit for the following section of roadway or street shall be erected on the right side of the roadway or street.

"Speed limits under this section shall be referred to as 'Limited Zones.'"

The certificate to said regulations recites that they were adopted pursuant to, inter alia, section 1101, et seq., of said code, especially section 1105 thereof, the relevant portion of which provides as follows:

"(a) The Secretary of Highways of this Commonwealth shall forthwith make and publish regulations for the design, location, and operation of all official traffic signs, signals, and markings in this Commonwealth, and such traffic signs, signals, and markings shall correlate with, and, so far as practicable, conform with, the Manual on Uniform Traffic Control Devices adopted by the Joint Committee of the American Association of State Highway Officials, the Institute of Traffic Engineers, and the National Conference on Street and Highway Safety, published August, 1948, and amendments thereto. Local authorities are directed to follow the uniform regulations for traffic signs, signals, and markings as so provided, and no other system shall be regarded as official."

The fourth paragraph of the foregoing regulation raises the question whether or not speed-limit signs must be erected on both sides of the roadway at the beginning of a reduced speed zone and whether or not

the erection of such signs must be proven. Without the benefit of any decisions on this question, we conclude that the foregoing regulation is directory only to officers of municipal subdivisions, that the legislature did not intend to authorize the Department of Highways to amend section 1002(b)(2) by regulations adopted pursuant to section 1105, and that it is necessary for the Commonwealth to prove in a proceeding under section 1002(b)(2) that signs were erected on both sides of the highway at the beginning of a reduced speed zone in accordance with the foregoing regulation.

## CONCLUSIONS OF LAW

1. In a proceeding under section 1002(b)(2) of the code, the Commonwealth must prove that reduced speed-zone signs were placed on the right-hand side of the highway facing traffic at intervals not greater than one-eighth of a mile within the limited zone.

2. Since the Commonwealth failed to prove placement of such signs as aforesaid, appellant's operating privileges should not be suspended.

## EPILOGUE

This is the second decision between the same counsel which we have made since taking office at the beginning of this year, without the benefit of briefs from either counsel. In this case, neither counsel furnished authorities to the court at time of hearing on May 12th. Counsel for appellant then agreed to file a brief within 10 days. Since he did not observe his commitment, we reminded him by phone calls on May 31st, June 6th, and July 5th and by following letter on July 18th:

"The above matter was heard on May 12, 1972. Although you then indicated your intention of filing a Brief and we have inquired of you repeatedly concerning it, we have not yet received it. Now, the Court Administrator, on behalf of the Chief Justice, has requested us to notify you to file your Brief. By reason of implementation of unified court system and resulting supervision by the Chief Justice and his Court Administrator, policy must be established between the Bench and the Bar to expedite such situations as we now face in the above case. I would prefer to present the policy matter to the Bar in the abstract, but I shall be obliged to consult the Bar Association concerning the above case unless you file your Brief promptly."

We received a letter from the Chief Justice on September 22nd politely taking us to task for not deciding this case and a few others, including three cases in which counsel for the Commonwealth in this case has not favored us with briefs. On October 27th we received a firmer message from the Chief Justice by telephone whereupon we locked our door, researched the law and decided this case.

By reason of this experience, we suggest that not only will prompt and thorough briefs help us keep our door open to do other work in which members of the bar are interested, but they will also tend to:

1. Enhance quality of advocacy;
2. Foster sound decisions;
3. Expedite judicial business; and
4. Bolster confidence in our legal system.

Although the Court Administrator's analysis of judicial work may be more quantitative than qualitative, the unified court system, together with concomitant administration, now is upon us, and we must all govern ourselves accordingly.

## ORDER

Now, October 30, 1972, the appeal is sustained. Appellant shall pay the costs of this proceeding. Exceptions are noted to Robert B. Brugler, Esq., attorney for the Commonwealth and to Harry B. Thatcher, Esq., attorney for appellant.