## Jones License

*Donald M. McCurdy*, for appellant.

*Francis R. Lord*, for Secretary of Revenue.

DIGGINS, J., March 27, 1963.—On January 9, 1962, the operator-appellant, Gordon Richard Jones, entered a plea of guilty to indictment no. 187, December term, 1961, in the Court of Quarter Sessions of Delaware County, charging him with operating a motor vehicle after his operating privilege had been suspended (75

PS §624(6)). A certified copy of the conviction was forwarded to the Department of Revenue. On March 23, 1962, the Secretary of Revenue, upon receipt of the aforesaid report of conviction, and without departmental hearing, suspended appellant's privileges for a period of one year, effective March 23, 1962.

Thereafter, appellant, on April 23, 1962, appealed the order of the Secretary of Revenue to the court of common pleas and hearing was held thereon on May 24, 1962, and is now before us for adjudication. . . .

The principal questions of law here presented are as follows:

1. Can defendant, hereinafter referred to as appellant, whose license was suspended under section 618-(a) (2) of The Vehicle Code of April 29, 1959, P. L. 58, without a hearing, maintain an appeal under section 620 thereof without first requesting a hearing under section 618(h), and;

2. Are the extenuating facts and circumstances presented here such that the suspension constituted an abuse of discretion?

This record discloses that the license of appellant had originally been suspended for a period of 30 days commencing September 20, 1961, for a conviction of speeding in the State of Delaware. Under the practice of the Department of Revenue, the suspension would have expired as of midnight, October 18, 1961, and accordingly the department would in due course deposit the restored license in the mail at the close of business on October 18, 1961, so that the driver would have the license in the first mail the following morning which, in fact, did occur in this case.

Appellant had an arrangement with his father, who is a guard at an industrial plant in the area, whereby it was the responsibility of appellant to drive his father and a neighbor to their place of employment at various hours, day and night, because of shift work. When the

license was suspended, appellant felt an obligation to continue the service to his riders and accordingly made arrangements with his girl friend, a licensed operator, to drive his father. Although this was an onerous chore for the girl friend, she did it faithfully. Usually appellant accompanied her, particularly on the night shift journeys.

The incident which led to the case here presented occurred on October 18, 1961. Appellant had accompanied his girl friend who drove the riders to the industrial plant and were returning, the practice being for the girl friend to take the automobile to her place of residence in Philadelphia and keep it there. As they were returning to leave appellant off, his girl driver complained of illness, specifically an acute pain in the abdomen. Appellant suggested that it was dangerous for her to drive the car and suggested that he drive it to her home. She protested that it was the last night of the suspension and would be an improvident thing to do. The pain persisting, however, she suggested that if they stop at a diner and get a cup of coffee for her, it might relieve the pain. This was done. They reentered the car. The pain, however, did not subside and was unusually severe, whereupon appellant insisted upon driving the girl to her home and she reluctantly acquiesced. On the way, appellant failed to bring the wheels to a full stop at a stop street. This was about 10:55 p.m. A policeman stopped him and discovered the license suspension.

At a subsequent summary hearing, appellant was fined for the traffic violation and held for court for driving after suspension, on which charge he was fined $100 and costs of prosecution, which costs amounted to $52.37. Thereafter, without a hearing, the Secretary of Revenue suspended the operator's privilege for one year for having driven during suspension.

There is no doubt that under these circumstances, the secretary can, under section 618(a)(2), suspend the

license without a hearing. The Vehicle Code provides as follows:

"Section 618. Suspension of License or Operating Privileges

"(a) The secretary may suspend the operating privilege of any person, with or without a hearing before the secretary or his representative, upon receiving a record of proceedings, if any, in which such person pleaded guilty, entered a plea of nolo contendere, or was found guilty by a judge or jury, or whenever the secretary finds upon sufficient evidence:

"(2) That such person has been convicted of a misdemeanor, or has forfeited bail upon such a charge, in the commission of which a motor vehicle or tractor was used."

Here, of course, the authority to suspend, with or without a hearing, comes by reason of the conviction of driving after the license was suspended and before it was restored. The Vehicle Code provides in section 618(h) that under these circumstances, the secretary shall immediately notify such person and afford him an opportunity of a hearing, provided such hearing has not already been held, and after such hearing, the secretary shall either rescind his order of suspension, or, good cause appearing therefor, may suspend the operator's license or learner's permit of such person for a further period. Appellant here did not ask for this hearing and the Commonwealth contends that having failed to do this, the appeal to this court is premature. There is, however, no merit in this position.

In McQuaide License, 7 D. & C. 2d 686, 687, the court said:

"The Commonwealth argues that the appeal should be dismissed, appellant directed to surrender his license, and submit to a departmental hearing. This would imply that the suspension was interlocutory and hence no right of appeal. We regard a suspension, either with or

without hearing, as appealable under section 616 [now 620]. If one believes himself aggrieved by an order of the Secretary of Revenue, he may have recourse to this court for a judicial determination. In effect, this is a waiver of the departmental hearing and the court hears the matter de novo, examines into the facts and determines whether the suspension will be sustained or reversed: Commonwealth v. Funk, supra; Commonwealth v. Cronin, 336 Pa. 469; Handwerk Automobile License Case, 348 Pa. 263; Commonwealth v. Emerick, 373 Pa. 388.

"An order which deprives one of his operator's license, whether impliedly interlocutory or not, is a suspension under the law and appealable to this court."

And further on this point, in Hamsher Motor Vehicle Operator License Case, 196 Pa. Superior Ct. 336, at 339, Judge Woodside, speaking for the court, said:

"Furthermore, even if the secretary would be required to notify the operator of her right to a hearing, under principles generally applied to the waiver of procedural defects, the error would be corrected by the taking of the appeal followed by the hearing de novo."

The interesting thing about the foregoing case is that the lower court had reversed this suspension because the secretary had not notified appellant of her right to a hearing, which action was reversed because the appeal made the matter de novo before the common pleas court, accentuating the fact that under the law, hearing or no hearing, if the appeal is taken, it is de novo and the court has jurisdiction. Therefore, this defendant, whose license was suspended without a hearing, is properly before this court on appeal.

This brings us to the question of extenuating facts and circumstances. It seems clear that this matter,

being de novo before the court, extenuating facts and circumstances are to be considered. As the Supreme Court said in Commonwealth v. Emerick, 373 Pa. 388, at 394:

"The Commonwealth again contends, as it unsucessfully has previously done, that this statutory provision restricts the power of the Court of Common Pleas to the narrow inquiry whether or not the licensee violated the Code, and if so, the suspension of the Secretary must be sustained. But on numerous occasions this Court has denied such contention. We have repeatedly decided that on appeal the hearing is *de novo*. In Commonwealth v. Wagner, 364 Pa. 566, 73 A. 2d 676, Mr. Justice Jones encompassed the problem when he said, p. 568: 'It is the Commonwealth's contention that, on the appeal from the suspension of the petitioner's license, the power of the court of common pleas was restricted, by the very words of the Code (Sec. 616), ". . . to determin[ing] whether the petitioner is subject to suspension of operator's license . . . by the secretary under the provision of this act", and that, the court below having found that the petitioner had violated the Code in the manner alleged, there was nothing left for the hearing court to do but to sustain the Secretary's suspension of the petitioner's license. Unfortunately for that contention, it was ruled by this court a number of years ago that the original requirement of Sec. 616 of The Vehicle Code of 1929 that the hearing court ". . . determine whether the petitioner *is subject to suspension of operator's license* . . . under the provisions of this act [emphasis supplied]" meant that ". . . the court [was] to hear de novo the witnesses of the Commonwealth and the witnesses of the licensee, and, from the testimony taken, . . . determine *anew whether the operator's license should be suspended*" (Emphasis supplied): Commonwealth v. Funk, 323 Pa. 390, 399, 186 A. 65 (1936). Thus, the merit of the suspension

was early recognized by this court as being a matter for the hearing court's independent determination. And, that ruling, we have ever since uniformly followed and applied.' "

And further, on page 397, the court, in discussing the case, said that where the testimony of the Commonwealth is disputed and there is credible conflicting testimony, the hearing judge must make a finding of fact and exercise his discretion concerning suspensions, and if the testimony supports such finding, his discretion will not be disturbed. And further, the court said, that if the testimony so taken de novo is undisputed, but there are submitted extenuating facts and circumstances, such as, inter alia, inadvertence, emergency, unintentional or accidental violations, if adequately supported by the testimony, the exercise of the hearing judge's discretion will not be disturbed.

The language of the Supreme Court, in Handwerk Automobile License Case, supra, at page 265, is particularly apropos here when the court said:

" '. . . the hearing de novo in the court below protected defendant against an arbitrary exercise of power on the part of the Secretary. It gave defendant his day in court, and with it the right to present every available defense which he possessed against the suspension of the license.' In the exercise of the broad power thus conferred by the legislature, the courts are to administer justice according to the evidence and circumstances presented, and the action of a lower court will not be disturbed except for manifest abuse of discretion."

A similar factual situation arose in the case of Munafo License, 24 D. & C. 2d 463, 467. There the operator drove the automobile after suspension to take his ill father three blocks to a doctor's office. In that case, as in ours, this was a technical violation of driving during suspension. The court held these circumstances to constitute an emergency and said:

"The decision here is based solely on our belief that compassion compelled this appellant to act as he did, and that he should not be further penalized by exclusion for an additional year from his basic work as a professional truck driver."

The same rule is stated in Commonwealth v. Baker, 39 D. & C. 294, and further, as indicating the philosophy of the law in these cases, in Seltzer License, 75 D. & C. 574, at 575, the court said:

"The court in other cases on similar facts has ruled that it will not necessarily sustain a suspension based merely upon a technical violation . . . In each case we have considered the attending circumstances along with the violation, and the Supreme Court of Pennsylvania in Commonwealth v. Wagner, 364 Pa. 566, has affirmed the action of this court in so doing."

It is therefore abundantly clear to us that we have the right and the duty in this appeal to consider extenuating circumstances and further that emergency constitutes an extenuating circumstance. Here an honest and determined effort had been made by the operator to suffer the penalty of the suspension and in the fading hours thereof, he was faced with the acute illness of his substitute driver at a time when the vehicle was in operation. The driver needed to be gotten home and medical attention was necessary. The record shows that the condition of the girl driver was not fabricated or exaggerated. Subsequent hospitalization and medical diagnosis disclosed a kidney infection. The foregoing facts are undisputed.

To say that these are not extenuating circumstances is to take both a callous and an unrealistic view. We have no doubt whatever that if a hearing had been held in this case, the secretary himself would have so found.

Therefore, the further suspension for one year under these circumstances is deemed an abuse of discretion and we, therefore, make the following

*Order*

And now, to wit, March 27, 1963, it is ordered and decreed that the order of the Secretary of the Commonwealth of Pennsylvania suspending the motor vehicle operator's license of Gordon Richard Jones for a period of one year be and the same is hereby reversed and the appeal is sustained.